UNITED STATES of America, Plaintiff,

v.

Denis G. ATANDI, Defendant.

Case No. 2:02CR515K.

United States District Court, D. Utah, Central Division.

Oct. 30, 2002.

S. Austin Johnson, Orem, UT, for defendant.

David F. Backman, U.S. Attorney's Office, for U.S.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendant Denis Atandi's Motion to Dismiss the Indictment and Plaintiff United States of America's Motion to Stay. Oral argument was held on these matters on October 22, 2002. At the hearing, Plaintiff was represented by David Bachman and Defendant was present and represented by S. Austin Johnson. Plaintiff withdrew its Motion to Stay at the hearing. After carefully considering the memoranda submitted by the parties on the motion to dismiss as well as the law and facts relating to this matter, and now being fully advised, the court renders the following Order.

## BACKGROUND

On May 25, 2002, Defendant was arrested for being an illegal alien in possession of firearms in violation of 18 U.S.C. § 922(g)(5). The Indictment against Defendant was dismissed without prejudice by Judge Cassell because the government did not have sufficient evidence to show that Defendant was unlawfully in this country on May 25, 2002. The government reindicted Defendant and the case was assigned to this court.

On March 6, 1996, Defendant was admitted to the United States as a tourist. He is a citizen of Kenya. On October 8, 1999, Defendant's immigration status changed to student or F–1. His I–94, or authorization record of his stay in the United States, states that it is valid for the "Duration of Status" ("D/S"). On November 5, 2000, Defendant married Teodora Stancheva, who was a lawful permanent resident in the United States. Later that month, on November 27, 2000, Defendant was arrested for a D.U.I. in Provo, Utah.

On December 1, 2000, Defendant was taken into custody on December 1, 2000, and placed in proceedings with the Immigration Court. INS initiated proceedings alleging that Defendant had failed to maintain his status as a student because he had not attended classes since December 1999. The INS gave Defendant his Notice of Rights informing him that it alleged he was illegally in the United States and that he had a right to a hearing before the Immigration Court to determine whether he may remain in the United States. INS also informed Defendant that if he requested a hearing he may be released on bond until the hearing date.

Defendant requested a hearing, was released on bond, and received a Notice to Appear ("NTA"), informing him that it was evidence of his registration while he was under removal proceedings. The NTA also guaranteed that Defendant would be advised by the immigration judge of any relief from removal for which he may appear eligible and that he would be given "reasonable opportunity to make any such application to the immigration judge." Defendant was scheduled for his first hearing with the immigration judge on March 20, 2001.

While these removal proceedings were pending, on January 19, 2001, Defendant

applied to reinstate his student visa. He had previously failed to maintain his student status because his mother was ill and his brother, who financially supported him, was killed in a car accident on April 12, 2000. On January 27, 2001, the INS denied Defendant's application to reinstate his student visa. The notice informed him of the denial and stated that the application was denied "for the following reason: SUBJ has hearing on 3–20–01."

On February 20, 2001, Mrs. Atandi filed an immigration petition for her husband. The immigration petition, on Form I–130, was approved by the INS on January 30, 2002, but Defendant was informed that he was not yet eligible to adjust his status at that time. Mrs. Atandi filed an application to become a U.S. citizen on July 7, 2002, and it is likely that she will become a U.S. citizen within the next few months. Once Mrs. Atandi becomes a U.S. citizen, Defendant will be eligible to file Form I–485 to adjust his status to lawful permanent resident and to receive temporary work authorization that will remain valid while his application to adjust status is pending.

The immigration judge has had several hearings on Defendant's status and relief issues related to deportation. The first hearing, which was held March 20, 2001, was continued until March 7, 2002 for relief and adjustment of status. The second hearing on March 7, 2002, was continued to March 13, 2003 for "adjustment merits." On March 7, 2002, the INS court accepted Defendant's admissions related to whether he had violated his student status. The immigration judge found Defendant deportable based on this admission. However, the immigration judge did not enter an order of deportation and set the case for a hearing on relief from removal for March 13, 2003. The immigration judge gave Defendant a notice that he needed to submit his fingerprints to the INS and file his I–485 application for adjustment of status to lawful permanent resident before the 2003 hearing.

On May 25, 2002, Defendant was arrested for being an illegal alien in possession of firearms. Defendant was in possession of at least one firearm and various ammunition. An INS agent, Special Agent Chard, was present when Defendant was arrested. Special Agent Chard stated that Defendant was here illegally and that he had already attempted to extradite him. Special Agent Chard then verbally revoked the bond Defendant had posted and took Defendant into custody. INS has refused to grant any bond for Defendant so he has remained in custody since May 25, 2002.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendant has filed a motion to dismiss the Indictment because he maintains that he was lawfully present in the United States when he was arrested for possessing firearms and ammunition in violation of 18 U.S.C. § 922(g)(5). Section 922(g)(5) provides, in pertinent part, that it shall be unlawful for any person to possess firearms or ammunition "who, being an alien—(A) is illegally or unlawfully in the United States." To prove a violation of Section 922(g)(5), "the government must prove that the alien was in the United States without authorization at the time the firearm was received." *United States v. Hernandez*, 913 F.2d 1506, 1513 (10th Cir.1990). Therefore, the issue before the court is whether Defendant was illegally or unlawfully present in the United States on May 25, 2002, when he was arrested for possessing firearms and ammunition.

The government asserts that the immigration judge's March 7, 2002 order finding Defendant deportable is enough to find that Defendant was illegally or unlawfully in this country after that date. Any alien, such as Defendant, "who was admitted as a nonimmigrant and who has failed to

maintain the nonimmigrant status in which the alien was admitted or to which the alien was charged under section 1258 of this title, or to comply with the conditions of any such statute, is deportable." 8 U.S.C. § 1227(a)(1)(C). A "student is considered to be maintaining status if he or she is making normal progress toward completing a course of studies." 8 C.F.R. § 214.2(f)(5). Although Section 1227(a)(1)(C) states that such an alien is deportable it does not speak to whether an alien is illegally or unlawfully in the country. In fact, the court can find no support for the government's position that a finding of deportability makes an alien illegal or unlawful before a final order of deportation or removal is entered.

The terms "illegally and unlawfully" as used in Section 922(g)(5) are not specifically defined in either the criminal statutes or immigration statutes or regulations. However, the term "unlawful presence" is statutorily defined in immigration statutes to apply to a person who is present in the United States after the expiration of the period of the stay authorized by the Attorney General or who is present in the United States without being admitted or paroled. 8 U.S.C. § 1182(a)(9)(B)(ii). A September 19, 1997 INS Memorandum, defining "unlawful presence," "notes that unlawful presence is not triggered by a status violation alone." *See* Gordon, Mailman & Yale–Loehr, 5 *Immigration Law & Procedure* § 63.10[2][b], at 63–122 (citing Memorandum from Paul W. Virtue, Acting INS Executive Associate Comm'r, to all field offices, File No. 96 Act # 058, HQIRT 50/5.12) (Sept. 19, 1997), *reproduced in* 74 Interpreter Releases 1498 (Sept. 29, 1997), and 2 Bender's Immigr. Bull. 842 (Oct. 15, 1997). Unlawful presence can begin before the expiration date on the I–94 if: "(1) an immigration judge makes a determination of a status violation in exclusion, deportation, or removal proceedings; or (2) the Service makes such a determination while adjudicating an immigration application." *Id.*

■ Similarly, for nonimmigrants, like a student, with a duration of status ("D/S") on their visa, "meaning they have no fixed end date on their I–94 card, unlawful presence does not begin to accrue when removal proceedings begin, but rather only when the INS finds a status violation while adjudicating a request for an immigration benefit or if an immigration judge finds the alien removable." *See* Gordon, Mailman & Yale Loehr, 5 *Immigration Law & Procedure* § 63.10[2][b], at 63–122 (citing Memorandum from Michael Pearson, Executive Associate Commissioner, INS Office of Field Operations, to Regional Directors, File No. HQADN70/21.1.24.P) (Mar. 3 2000) (amending INS Adjudications Field Manual § 30.1(d), *reprinted in* 77 Interpreter Releases 316 (Mar. 13, 2000), 5 Bender's Immigr. Bull. 286 (Mar. 15 2000)); *see also* Austin T. Fragomen & Steven C. Bell, *Immigration Fundamentals: A Guide to Law and Practice* § 7.2 (2001).[1]

■ The filing of a Notice to Appear ("NTA"), which initiates deportation pro-

---

**1.** The applicable law has changed with respect to when a nonimmigrant with a student visa is considered unlawfully present. *See* Austin T. Fragomen & Steven C. Bell, "Immigration Fundamentals: A Guide to Law and Practice" § 7.2 (2001) ("Massive immigration reform legislation, entitled the 'Illegal Immigration Reform and Immigrant Responsibility Act of 1996' ... was signed into law on September 30, 1996 ... (Pub.L. No. 104–208, 110 Stat. 3009). Title III of the 1996 Act, entitled 'Inspections, apprehension, detention, adjudication, and removal of inadmissible and deportable aliens,' includes several provisions which substantially change the bases for denying admission to aliens and removing aliens already in the United States.") The IIRAIRA revised the process by which aliens are removed from the United States and a nonimmigrant with a student visa is not removable

ceedings, has no effect on determining periods of unlawful presence. 8 C.F.R. § 239.3. When removal proceedings begin, jurisdiction vests with the immigration judge. *Id.* § 3.14. At that time, INS cannot determine that someone is illegally present, only the immigration judge can make that decision. INS agents are not authorized to cancel a nonimmigrant's visa upon commencement of a removal hearing, they can only do so if someone is ordered removed. 22 C.F.R. § 41.122(h)(2), (4); *see* Ira J. Kurban, *Kurzban's Immigration Law Sourcebook,* 222 (AILF 7th ed.2000).

In *United States v. Landeros–Mendez,* 206 F.3d 1354, 1357 (10th Cir.2000), the court upheld a conviction under Section 922(g)(5) because it upheld a companion charge of illegal reentry. *Id.* at 1358 n. 5. In the course of its analysis of the illegal reentry charge, the court recognized that two INS agents had testified at trial that "a warrant of deportation or removal is prepared after an order of deportation or removal is issued and signed by an immigration judge and that they cannot physically expel an alien unless an order of deportation or removal has been issued." Also, the evidence at trial established that deportation is based upon a final order by "an immigration judge in exclusion, deportation, or removal proceedings." Therefore, Tenth Circuit case law also recognizes that the INS has no jurisdiction over an alien in deportation or removal proceedings until a final order is issued by the immigration judge.

Defendant's arrest occurred because Special Agent Chard told the Orem Police that Defendant was illegally present. However, Chard had no authority to make such a statement when the issue was still pending before the immigration judge. At the time Defendant was arrested for possessing firearms, Defendant was authorized to be in the country because proceed-

ings before the immigration judge were still pending.

Even though the immigration judge found Defendant was deportable, his finding was not a final order and he did not find that Defendant should be removed. Defendant's right to adjust status on March 13, 2003, and the D/S language on his F 1 student visa indicate that Defendant was not unlawfully present in the United States because the immigration judge had not issued a final order of removal. Although the immigration judge had found Defendant deportable in March 2002, he also found that Defendant may be entitled to relief from removal and set a relief hearing for March 13, 2003. The immigration judge, therefore, has not made a final order with respect to Defendant's status. Because the immigration judge has not made a final order, Defendant was not unlawfully in this country on May 25, 2002.

In addition, even though INS denied Defendant's request for reinstatement of his student visa in January 2001, this denial occurred after Defendant's case was submitted to the immigration judge and the reason given for denial was that the case was before the immigration judge. Therefore, INS's denial of Defendant's application to reinstate his student visa was not on the merits of Defendant's application, it merely recognized that INS did not have jurisdiction over his case while the immigration judge was considering the case. Therefore, INS's denial is immaterial to whether Defendant was lawfully present on May 25, 2002.

In *United States v. Hernandez,* 913 F.2d 1506 (10th Cir.1990), the court found that the defendant did not illegally possess a firearm under 18 U.S.C. § 922(g)(5) because the defendant had filed for amnesty and he was able to adjust his status with

until a final order by an immigration judge.          *See id.*

the INS. Therefore, the government could not bear its burden of proving that the defendant was illegal on the day he possessed firearms. Also, in *United States v. Brissett,* 720 F.Supp. 90 (S.D.Tex.1989), the court dismissed a case for possession of firearms against a defendant who had a pending I–485 application because INS had allowed him to remain in the country pending disposition of his application.

As in these cases, Defendant has been lawfully present in the United States pending the disposition of his case with the immigration judge. Defendant is lawfully in the United States until a final order is issued by the immigration judge. In addition, the INS approved an I–130 petition for Defendant on January 30, 2002. The immigration judge gave Defendant the opportunity to adjust his status at a relief hearing on March 13, 2003. At that hearing, the immigration judge could chose to reinstate Defendant's student status or find Defendant eligible for permanent residence status because of his approved I–130 petition.

The government argues that, on policy grounds, this decision grants Defendant more rights to possess a firearm than he had under his nonimmigrant student visa. However, the government chose to bring this case on the basis that Defendant was unable to possess firearms because he was illegally or unlawfully within the country, not because he had a nonimmigrant student visa. The government acknowledged at oral argument that it brought the case under the "illegal or unlawful" subsection because it thought it would be incapable of proving its case under the "nonimmigrant visa" subsection. Whether or not Defendant was still a student with a nonimmigrant visa on May 25, 2002, Defendant was also legally in the country because of his approved I–130 petition and his ability to change his status at the relief hearing on March 13, 2002. This court refuses to rewrite immigration statutes and regulations merely so the government can fit this case into Section 922(g)(5).

Because he has been in the country lawfully on a bond during the pendency of the removal proceedings, the INS judge has not issued a final order or determined that Defendant should be removed, and Defendant has the right to become a lawful permanent resident because of an approved I–130 petition, Defendant was lawfully present in the United States on May 25, 2002. Therefore, Defendant cannot be guilty of violating 18 U.S.C. § 922(g)(5) and Defendant was able to possess firearms on May 25, 2002. Defendant's motion to dismiss is granted and the Indictment against him is dismissed with prejudice.

### CONCLUSION

Based upon the above reasoning, Defendant's Motion to Dismiss is GRANTED and the Indictment against him is DISMISSED WITH PREJUDICE.