**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Santiago REYNA, aka Chago; Victor Manuel Nolasco–Perez, aka Victor Manuel Perez–Bueno; Everardo Antonio Cardenas, Defendants–Appellees.**

**No. 99–10333.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 2000

Filed July 31, 2000

J. Douglas Wilson, Mary. E. Pougiales, Oakland, CA, for plaintiff-appellant.

Mark Rosenbush, San Francisco, CA, for defendant-appellee Nolasco–Perez.

Before: LAY,[1] D.W. NELSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This appeal presents the question of whether a district judge may issue an order approving a wiretap on the application of an Assistant United States Attorney before the Attorney General or her designate has authorized the application. We hold that such an order violates the federal wiretap statute and affirm the judgment of the district court suppressing evidence obtained by the improperly authorized wiretap interception.

I

At issue in this appeal is a wiretap application made pursuant to 18 U.S.C. § 2516, which provides that the Attorney General or certain of her designated agents "may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications." According to the statute, such an application "shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application." 18 U.S.C. § 2518(1). Both the application and the court order approving the application must state the identity of the officer authorizing the application. 18 U.S.C. § 2518(1)(a) & (4)(d).

In October of 1997, Assistant United States Attorney Mary Pougiales submitted to the Office of Enforcement Operations ("OEO") in the Criminal Division of the United States Department of Justice, in Washington D.C., a draft application to intercept communications over a cellular telephone line. Under the apparent usual practice, the OEO staff attorney assigned to the application would inform Pougiales that he was recommending approval of the application by the authorized agent of the Attorney General. Following that, Pougiales and the assigned law enforcement officer would bring the application to the assigned judge so that he or she could review the application in preparation to approve it, after the designated officer in the Criminal Division had authorized the application.

On the afternoon of Friday, October 31, 1997, after the OEO staff attorney notified Pougiales that he had recommended approval of the application but before any authorized officer had approved it, Assistant United States Attorney Lewis Davis and Drug Enforcement Administration

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Special Agent Douglas James brought the application to United States District Court Judge Thelton Henderson. The application stated that:

> Under the power delegated to her by special designation of the Attorney General ... the Acting Assistant Attorney General, Criminal Division, has authorized this Application. Attached to this Application are copies of the Attorney General's order of special designation and the Memorandum of Authorization approving this Application.

Despite the reference to the contrary, no authorization of the application was attached. Either Davis or James told Judge Henderson that the written authorization was on its way but had not yet been received. Judge Henderson then signed the order approving the as-yet unauthorized application at 1:42 p.m., adding in his own handwriting: "This order is not to be executed until and unless formal approval in writing is received from the U.S. Attorney General or her designee." Although the evidence is not entirely conclusive on this point, we assume for the purposes of this appeal that approximately one hour later, an OEO staff attorney faxed to Pougiales a memorandum authorizing the wiretap application. The government commenced the wiretap within minutes after receiving the facsimile.

The following Monday morning, November 3, 1997, Pougiales submitted the authorization memorandum to Judge Henderson. Judge Henderson then filed an order attaching the authorization memorandum, along with the order designating the Attorney General's agents to the application, and ordered the application itself amended to reflect that a Deputy Assistant Attorney General authorized the application, instead of the Acting Assistant Attorney General originally named in the application.

 Subsequently, a grand jury returned a 20–count superseding indictment charging a conspiracy to manufacture and distribute methamphetamine and related offenses. Judge Saundra Brown Arm-strong, who presided over the criminal case, granted defendants' motion to suppress the intercepted communications, holding that the wiretap authorization order was invalid because the government did not obtain the required authorization of the application before submitting it to the district court for approval. The government timely appeals the district court's order, and has certified that its appeal is not taken for purposes of delay. We have jurisdiction under 18 U.S.C. §§ 3731 & 2518(10)(b). We review de novo a district court's wiretap suppression decision. *See United States v. Duran,* 189 F.3d 1071, 1083 (9th Cir.1999).

## II

 Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Act"), 18 U.S.C. §§ 2510–2520, establishes the procedure by which law enforcement officials may obtain judicial authority to intercept communications. The Act did not reflect an expansive view of wiretapping. To the contrary, the purpose of the legislation "was effectively to prohibit, on the pain of criminal and civil penalties, all interceptions of oral and wire communications, except those specifically provided for in the Act...." *United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (footnote omitted). In this spirit, the Act effectively cabins law enforcement officials' wiretap authority: "it is at once apparent that [the Act] not only limits the crimes for which intercept authority may be obtained but also imposes important preconditions to obtaining any intercept authority at all." *Id.* at 515, 94 S.Ct. 1820. As the Supreme Court apprehended:

> Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where circumstances warrant the surreptitious inter-

ceptions of wire and oral communications.

*Id.*

■ Relevant to our case is § 18 U.S.C. § 2518, which establishes a careful procedure for authorizing a wiretap:

Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information: (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application[.]

18 U.S.C. § 2518(1)(a). Furthermore,

Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify—

 . . . . .

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application[.]

18 U.S.C. § 2518(4)(d). Thus, the Attorney General or her designated agent must authorize the wiretap application of a subordinate federal law enforcement officer before a judge approves it. Each application must include the identity of the officer authorizing the application, further signifying that authorization is a precondition to approval.

These requirements are not matters of mere etiquette, to be disregarded when espial exigencies make compliance inconvenient. (A true emergency, which this case indisputably is not, has its place in the statute's system. *See* 18 U.S.C. § 2518(7)). Nor was this an instance of Congressional afterthought. Rather, these obligations are entwined in the Act's essential philosophic fabric:

The Act plainly calls for the prior, informed judgment of enforcement officers desiring court approval for intercept authority, and investigative personnel may not themselves ask a judge for authority to wiretap or eavesdrop. The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order.

*Giordano,* 416 U.S. at 515–516, 94 S.Ct. 1820. As we noted in *United States v. Martinez,* 588 F.2d 1227, 1233 (9th Cir. 1978), "[t]his procedure is intended to make wiretap standards uniform, to provide for mature judgment by a responsible official, and to fix responsibility for electronic surveillance at a high level."

The government admits that it disobeyed the statute, and it could not seriously contend otherwise. In fact, the conditional order appears to be a departure from normal procedure, and the government offers no evidence that such occurrences are common or even correct within federal law enforcement offices. Nevertheless, the government contends that its partial compliance suffices to avoid the sanction of suppression.

■ Under the Act, a court may suppress evidence acquired through eavesdropping if "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." *See* 18 U.S.C. § 2518(10)(a). To be sure, under the terms of the statute, not "every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *United States v. Chavez,* 416 U.S. 562, 574–75, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). However, the Act requires suppression "where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Giordano,* 416 U.S. at 527, 94 S.Ct. 1820. The "prior, in-

formed judgment" of "a particular, responsible Department of Justice official" is such a requirement. Indeed, the "provision for pre-application approval was intended to play a central role in the statutory scheme and [ ] suppression must follow when it is shown that this statutory requirement has been ignored." *Id.* at 528, 94 S.Ct. 1820.

The statutory sequence of wiretap authorization makes it clear that prior authorization by senior executive branch officials is an express precondition to judicial approval under § 2516; its violation merits suppression. To hold otherwise would blur the lines separating the respective powers of the executive and judicial branches under the statute, and weaken the shield Congress erected against the prospect of an electronic panopticon. A district court may not delegate to law enforcement officials at any level its singular power to set the surveillance mechanism in motion. Neither rote reliance on staff recommendations at the Department of Justice, nor a district court's familiarity with repeated wiretap applications, allow the Attorney General to play understudy to a judge, or vice versa.

In short, "failure to secure approval of [the Attorney General or her designees] *prior to making application for judicial authority to wiretap* renders the court authority invalid and the interception of communications pursuant to that authority 'unlawful' within the meaning of 18 U.S.C. § 2518(10)(a)(i)." *Chavez,* 416 U.S. at 571, 94 S.Ct. 1849 (emphasis added). Thus, the district court correctly suppressed the evidence procured by the unlawful interception of communication.

AFFIRMED.