**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Carlos AGUILAR, aka Cheeks,
Defendant—Appellant.**

No. 00–50502.

D.C. No. CR–99–00084–D–AHM–13.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 2002.

Decided July 8, 2002.

Before TROTT, THOMAS and WARDLAW, Circuit Judges.

MEMORANDUM *

Carlos Aguilar ("Aguilar") appeals his conviction and 121 month sentence under 21 U.S.C. § 846 for conspiring to distribute and to aid and abet the distribution of controlled substances. Aguilar contends the district court committed reversible error by denying his motion to suppress wiretap evidence. In addition, Aguilar argues that the following three errors entitle him to resentencing: (1) the district court refused to reduce Aguilar's offense level as allowed by the Sentencing Guidelines for minor participants in the charged offense; (2) the district court lacked sufficient evidence to sustain its drug quantity calculation; and (3) the district court's calculation violated *Apprendi* by exposing Aguilar to a longer sentence than that supported by the jury's findings.[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

### A. Motion To Suppress Wiretap Evidence

"We review de novo a district court's wiretap suppression decision." *United States v. Reyna*, 218 F.3d 1108, 1110 (9th Cir.2000). In reviewing the original issuance of the wiretap order, we consider only whether the "four corners of the wiretap application" provide a "substantial basis" for a finding of probable cause. *United States v. Meling*, 47 F.3d 1546, 1552 (9th Cir.1995).

An order authorizing electronic surveillance must be based on probable cause. 18 U.S.C. § 2518(3)(a).

The judge must find probable cause to believe (1) that an individual is committing, has committed, or is about to commit specified offenses . . . (2) that communications relevant to that offense will be intercepted through the wiretap; and (3) that the individual who is the focus of the wiretap investigation will use the tapped phone.

*Meling*, 47 F.3d at 1552 (internal citations omitted). The gauge for assessing probable cause for an electronic surveillance warrant is the same as that used for search warrants—*i.e.*, the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Aguilar objected to the May 14, 1998 wiretap order for Target Telephone # 2. The phone was last seen in a car with Jesse Detevis ("Detevis"), a government "target subject."[2] The phone had been used to call Detevis on numerous occasions and was referenced in another wiretap as being in Detevis's possession. In addition, the phone had been used to call numbers that previous wiretaps had established were used to discuss drug sales and acts of violence by the Mexican Mafia. These facts established probable cause to issue the wiretap.

■ Aguilar objected as well to the June 16, 1998 wiretap order for Target Telephone # 2, a continuation of the May 14 order. The judge issuing the order considered several conversations taped from Target Telephone # 2. In those conversations, a target subject talked with associates of the Mexican Mafia and dis-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

1. Aguilar alleged also that the. district court violated his Sixth Amendment rights by admitting into evidence his co-conspirators' guilty pleas. We consider this Confrontation Clause claim in a contemporaneously issued opinion.

2. "Target subject" identifies a person under investigation by the government for suspected dealings with the Mexican Mafia.

cussed her illicit dealings with prison inmates: We believe these conversations provided the judge with probable cause to believe: (1) offenses were being committed by the Mexican Mafia; (2) communications relevant to those offenses could be intercepted on the targeted phone; and (3) target subjects would use that phone. Accordingly, the order authorizing continued wiretaps on Target Telephone # 2 was supported by probable cause.

■ Aguilar objected to a third wiretap order issued on July 27, 1998 for Target Telephone # 5. The judge considered evidence showing that Detevis used Target Telephone # 5 to discuss narcotics trafficking and that numerous calls had been made from the phone to other numbers thought to be used by other target subjects. For the same reasons outlined above, the district court had a substantial basis for concluding probable cause existed to authorize this wiretap.

### B. "Minor Participant" Reduction Under the Sentencing Guidelines

■ We review for clear error whether a defendant is a minor or minimal participant in a criminal offense. *United States v. Murillo*, 255 F.3d 1169, 1179 (9th Cir. 2001). We will reverse the district court's ruling only if the evidence creates a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir.1997) (internal quotation omitted).

The Sentencing Guidelines permit the sentencing court to reduce a defendant's offense level by two to four levels if he played a minor role in the charged offense. U.S.S.G. § 3B1.2. The district court acknowledged that Aguilar was not a "full-fledged member of the Mexican Mafia. But the role he played was dealing with people who were majors, major heavies in this, and they depended on him and his

role was important in carrying out the alleged conspiracy." Trial testimony placed Aguilar in the whirling midst of a wide-ranging drug network; one witness's testimony, which the district judge credited, implicated Aguilar in 20 heroin transactions. Under these circumstances, the district court's refusal to grant a reduction does not lead us to believe any error was committed, let alone a clear one.

### C. Calculation of Drug Quantity

■ We review the district court's drug quantity calculation for clear error. *United States v. Asagba*, 77 F.3d 324, 325 (9th Cir.1996). Of primary concern is the reliability of the evidence considered by the district court at sentencing.

The record makes clear that the district judge based his sentencing calculations on what he deemed trustworthy evidence:

I listened carefully to the testimony of the principal witnesses. I watched them. I evaluated their responses to cross-examination. And I find them to be believable and credible and in that sense reliable. And the events occurred some time ago and who kept track every single time of precise amounts, that can't be expected, but that there was a pattern of drug dealing or drug transactions involving Mr. Aguilar is indisputable.

Though the district judge found the witnesses credible and reliable, he did not blindly accept all their testimony concerning Aguilar. Instead, the district judge conservatively estimated drug quantity so that any inaccuracies in the calculation would accrue in Aguilar's favor. For instance, the court assumed only 20 heroin transactions took place to "account for the fact that [the witness's testimony] was imprecise." Further, the court estimated that eight of these transactions were for

less than a quarter-piece (6.25 grams), even though testimony demonstrated that several transactions involved 6.25 grams and 12.5 grams.

The district judge also conservatively estimated the amount of crack cocaine it attributed to Aguilar. Detevis testified that he provided Aguilar with crack cocaine on four or five occasions, ranging from 1/4 ounce to an ounce. From this testimony, the court counted only 1½ ounces for sentencing purposes because Detevis "acknowledged that his memory was fuzzy and that was a factor I took into account in my calculations."

Further confidence in the calculation flows from the fact that the district court's total drug calculation—981.696 kg (marijuana equivalent)—exceeds by 40% the 700 kg threshold for a Base Offense Level of 30. This wide margin of error coupled with the overwhelming testimonial evidence and the conservative approach to calculating quantity convinces us that the district court did not commit clear error.

### D. *Apprendi* Error

█ Aguilar claims for the first time on appeal that his sentence must be vacated because the district court committed *Apprendi* error. Because Aguilar failed to raise his *Apprendi* claim at sentencing, our review is limited to plain error. Fed. R.Crim.P. 52(b); *United States v. Buckland*, 277 F.3d 1173, 1178 (9th Cir.2002) (en banc), *cert. denied*, 122 S.Ct. 2314, 152 L.Ed.2d 1067, 2002 U.S. LEXIS 3989 (2002).

█ In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Drug

quantity is such a fact. *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000). The mere fact that a sentencing judge determined drug quantity does not, alone, constitute *Apprendi* error; the challenged sentence must expose the defendant to a penalty greater than the jury's findings support.

Here, the jury convicted Aguilar of narcotics conspiracy involving "cocaine, cocaine base, heroin, and methamphetamine;" the jury was not instructed that it needed to determine a particular drug quantity in order to convict. The statutory maximum term of imprisonment for an offense involving an *unspecified* amount of *any* of these drugs is 20 years (360 months). 21 U.S.C. § 841(b)(1)(C). The judge's findings exposed Aguilar to a prison term of 121 to 151 months, a term far below the maximum sentence supported by the jury's conviction. No *Apprendi* error exists under these facts.

**AFFIRMED.**