# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ANTONIO LOPEZ-PERERA,
            *Defendant-Appellant.*

No. 05-50102

D.C. No.
CR-04-01396-NAJ

OPINION

Appeal from the United States District Court
for the Southern District of California
Napoleon A. Jones, District Judge, Presiding

Argued and Submitted
January 12, 2006—Pasadena, California

Filed February 21, 2006

Before: Mary M. Schroeder, Chief Judge,
Alfred T. Goodwin and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Goodwin

1815

## COUNSEL

Jeremy D. Warren, San Diego, California, for the defendant-appellant.

Anne Kristina Perry, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

## OPINION

GOODWIN, Circuit Judge:

Antonio Lopez-Perera appeals his conviction of violating 18 U.S.C § 922(g)(5)(A), (being an alien illegally or unlawfully in the United States in possession of a firearm). He assigns error to the denial of his Federal Rule of Criminal Procedure 29 motion seeking a judgment of acquittal. Because the district court misinterpreted the meaning of the statute, it erred in denying the motion.

## I. Background

On May 9, 2004, Lopez-Perera, a citizen of Mexico, drove his van, with no passengers, from Mexico into the San Ysidro Port of Entry in California. When first asked by an officer at the border, Lopez-Perera falsely stated that he was a United States citizen. Lopez-Perera then offered a California security guard identification card as proof of his citizenship.

The officer did not accept the proffered card as proof of citizenship and directed Lopez-Perera towards secondary inspection. Lopez-Perera waited approximately twenty-five minutes in the secondary inspection area and then drove his van toward the north exit of the San Ysidro Port of Entry. Border officers noticed Lopez-Perera's movements and stopped him before he could leave the area.

After stopping the van, the officers arrested and searched Lopez-Perera. The search uncovered the California security guard identification card and a permit to carry an exposed firearm. The permit to carry an exposed firearm prompted the officers to search the van. The search revealed the presence of a .38 caliber Taurus Revolver.

Lopez-Perera was held at the port of entry and questioned by an Immigration and Customs Enforcement special agent.

After providing Lopez-Perera with a *Miranda* warning and receiving a signed waiver, the special agent learned that Lopez-Perera was a citizen of Mexico and that the pistol recovered in the van was Lopez-Perera's.

On May 19, 2004, Lopez-Perera was indicted for violating 18 U.S.C. § 911 (making a false claim of United States citizenship) and 18 U.S.C. § 922(g)(5)(A) (possession of a firearm by an alien illegally or unlawfully in the United States). On October 26, 2004, Lopez-Perera was tried on both counts in a bench trial. Lopez-Perera put on no affirmative evidence, conceded the false claim to citizenship charge, and moved for a judgment of acquittal with respect to the firearm charge. As noted, the court denied the motion and found Lopez-Perera guilty on both counts.

Lopez-Perera was sentenced to thirteen months imprisonment for each count followed by a year of supervised release on the false claim of citizenship charge and three years of supervised release on the firearm charge. The terms of imprisonment for each count were to run concurrently as were both terms of supervised release.

## II. Analysis

This appeal requires us to construe 18 U.S.C. § 922(g)(5)(A) and 27 C.F.R. § 478.11. Lopez-Perera argues that the drafters intended to use immigration terms of art when they denounced the possession of a firearm by a person "illegally or unlawfully in the United States." The district court disagreed and held that, by his physical presence in the port of entry, Lopez-Perera satisfied the element of the crime of being illegally or unlawfully in the United States. We hold that the law is contrary to the district court's ruling.

"To determine the plain meaning . . . of a statute, we must examine not only the specific provision[s] at issue, but also the structure of the law as a whole including its object and

policy." *Almero v. INS*, 18 F.3d 757, 760 (9th Cir. 1994). If a statute is silent regarding an issue, we will defer to the interpretation of the administrative agency charged with implementing the statute. *Id.* at 763.

**[1]** Here, 18 U.S.C. § 922(g)(5) reads:

> (g) It shall be unlawful for any person — . . .
>
>> (5) who, being an alien—
>>
>>> (A) is *illegally or unlawfully in the United States*; or
>>>
>>> (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(26))); . . .
>>
>> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(5) (emphasis added). The portion of the statute at issue in this case is the term "illegally or unlawfully in the United States." The statute provides no definition of what constitutes illegal or unlawful presence in the United States.

**[2]** The legislative history is similarly silent. No comments concerning the meaning of "illegally or unlawfully in the United States" appear in the 1968 legislative history. *See, e.g.*, 114 CONG. REC. S13867-69 (daily ed. May 17, 1968). There are also no comments regarding the term in the 1986 legisla-

tive history, when the statute was amended to include the most recent language for § 922(g)(5)(A). *See, e.g.*, 132 CONG. REC. S9556-60 (daily ed. May 6, 1986); 132 CONG. REC. H7075-92 (daily ed. April 10, 1986); 131 CONG. REC. S18155-18237 (daily ed. July 9, 1985).

When Senator Durbin introduced his 1998 amendment to the statute, his comments focused on his concern about foreign tourists purchasing firearms in the United States, not about aliens sneaking firearms into the country. *See* 144 CONG. REC. S8641 (daily ed. July 21, 1998) (statement of Sen. Durbin) ("I think, frankly, we ought to say that if you come into this country as our guest, not as a citizen of the United States, that we are going to restrict your right to purchase a firearm."). Senator Durbin did not offer a definition of the words used in the amended statute. *See id.* at S8639-42.

**[3]** The Bureau of Alcohol, Tobacco, and Firearms ("BATF"), however, as the agency charged with administering § 922, has promulgated a regulation including a definition for "Alien illegally or unlawfully in the United States." 27 C.F.R. § 478.11. The relevant portion of the BATF's definition provides:

> Aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant or parole status. The term includes any alien —
>
> (a) Who unlawfully *entered* the United States without inspection and authorization by an immigration officer and who has not been paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act (INA).

27 C.F.R. § 478.11 (emphasis added). The BATF's definition requires analysis because it fills a gap left by Congress in enacting § 922(g)(5)(A). *See Chevron, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).

In 1996, the BATF published a notice in the Federal Register that it was planning to amend the regulation to include definitions for the categories of persons prohibited from owning firearms. Definitions for the Categories of Persons Prohibited From Receiving Firearms, 62 Fed. Reg. 34,634, 34,635 (June 27, 1997) (to be codified at 27 C.F.R. § 478.11). During the requisite public comment process, the Immigration and Naturalization Service ("INS") submitted comments to the BATF regarding the immigration-related definitions. *Id.* In making the comments, the INS pointed out that "the INA uses *specific legal terms* to refer to the status of aliens in the United States." *Id.* at 34,637 (emphasis added).

**[4]** The BATF considered the INS' suggestions and stated that it "agrees with the INS that the wording of the definition for [aliens illegally and unlawfully in the United States] should reflect the terminology used in the Immigration and Nationality Act. Accordingly, [B]ATF is adopting INS' proposed definition into the final regulations." *Id.* These BATF statements in the Federal Register make clear that the language in 27 C.F.R. § 478.11 must be construed in light of immigration law.

**[5]** But, the analysis cannot end here because the definition that the INS recommended, and the BATF adopted, does not define the term "entered." In the context of immigration law, however, "enter" is "a specific legal term." Entering the United States "requires: '(1) a crossing into the territorial limits of the United States, *i.e.*, physical presence; (2)(a) inspection and admission by an immigration officer, or (b) actual and intentional evasion of the inspection at the nearest inspection point; and (3) freedom from official restraint.' " *Sidhu v. Ashcroft*, 368 F.3d 1160, 1163-64 (9th Cir. 2004) (quoting *Matter of Patel*, 20 I. & N. Dec. 368, 370 (1991)).

**[6]** Here, Lopez-Perera satisfied the first entry requirement because he crossed into the United States from Mexico; the San Ysidro Port of Entry is in the United States. Just as in

*Sidhu*, it is arguable whether Lopez-Perera satisfied the second entry requirement because he was considered by an officer at primary inspection and forwarded on to secondary inspection. The inspection point is moot, however, because Lopez-Perera was never free from official restraint and, therefore, never entered the United States. *See Id.* at 1164 ("Because Sidhu never exited secondary inspection, she was not free from official restraint."). "Aliens who proceed directly as instructed by signs or otherwise to the customs facility . . . are not sneaking into the United States. Instead they are presenting themselves to American officials in the manner designated by the United States government." *United States v. Zavala-Mendez*, 411 F.3d 1116, 1120 (9th Cir. 2005) (confirming the well established proposition that a person is not "in" the United States until he is not only physically present on the United States side of the border, but also enjoys "freedom from official restraint."), *see also United States v. Lombera-Valdovinos*, 429 F.3d 927, 929 (9th Cir. 2005) (explaining that "an alien who is on United States soil, but who is deprived of [his] liberty and prevented from going at large within the United States, remains under official restraint and therefore has not entered the country") (internal citations omitted).

We are confronted with two questions when analyzing an administering agency's construction of a statute. *Chevron*, 467 U.S. at 842. The first question is "whether Congress has directly spoken to the precise question at issue." *Id.* If it has, both courts and agencies are bound by Congress' clear meaning. *Id.* at 842-43. If Congress has not spoken clearly and an agency has promulgated a regulation, however, we cannot simply impose our own construction of the statute as we could in the absence of a regulation. *Id.* at 843. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the [second] question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* Deference is granted to the agency's administrative interpretations

whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

*Id.* at 844-45 (citations and internal quotations omitted).

**[7]** Considering the confluence of immigration law and criminal law inherent in § 922(g)(5)(A), it cannot be said that the BATF's decision to utilize immigration-specific terms is an impermissible construction of the statute. *See id.* at 866 ("[F]ederal judges — who have no constituency — have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of . . . policy choices and resolving the struggle between competing . . . public interest[s] are not judicial ones: 'Our Constitution vests such responsibilities in the political branches.' " (quoting *TVA v. Hill*, 437 U.S. 153, 195 (1978))). Furthermore, no part of § 922(g)(5)(A)'s legislative history indicates that the decision to use immigration law definitions is one that Congress would not sanction.

In its brief and in response to questions at oral argument, the government argued that the "official restraint" doctrine is limited to illegal re-entry cases under 8 U.S.C. § 1326. The cases cited by the government to support this argument, however, highlight Congress' detailed understanding of the difference between the terms "come to the United States" and "in the United States." *United States v. Hernandez-Garcia*, 284 F.3d 1135, 1137-39 (9th Cir. 2002) (recognizing a distinction

between "coming to" and "entering" the United States); *United States v. Gonzalez-Torres*, 309 F.3d 594, 599 (9th Cir. 2002) ("Deliberately overruling case law requiring entry to sustain a smuggling conviction, Congress replaced the words 'brings into' with the words 'brings to.' "). Indeed, in revising 8 U.S.C. § 1324 to no longer require an alien's "entry" to sustain a smuggling conviction, Congress has shown that it understands the distinction between "coming to" the United States (which does not require entry) and coming "into" or being "in" the United States (which requires both physical presence and freedom from official restraint). *See, e.g.*, *United States v. Munoz*, 412 F.3d 1043, 1048-49 (9th Cir. 2005) (holding that an alien being smuggled to the United States "*comes to*" the United States under 8 U.S.C. § 1324(a)(2)(B) when he crosses the border whether or not he or she is under official restraint).

**[8]** Section 922(g)(5)(A) does not criminalize the possession of a firearm by an alien who "comes to the United States" or "brings a firearm to the United States," but instead criminalizes the possession of a firearm by an alien who is "illegally or unlawfully *in* the United States." Therefore, because Lopez-Perera had not entered the United States, he could not have been "illegally or unlawfully *in* the United States."

## III. Conclusion

**[9]** It is clear that Lopez-Perera did not, at the time and place charged, enter the United States. Because he had not yet entered the United States, he could not have been "illegally or unlawfully *in* the United States." Congress has made clear that it understands the distinction between the terms "coming to" and "bringing to" the United States and the term "in the United States" and has chosen to use the latter in § 922(g)(5)(A). The district court erred in construing § 922(g)(5)(A) outside the context of immigration law and should have granted Lopez-Perera's Rule 29 motion. We

therefore REVERSE the conviction on the § 922(g)(5)(A) count, and remand the case for a revised sentence.