**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAVIER ANAYA-ACOSTA,
*Defendant-Appellant.*

No. 09-50610

D.C. No.
CR 09-00456-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
November 4, 2010—Pasadena, California

Filed January 3, 2011

Before: Mary M. Schroeder and Richard C. Tallman,
Circuit Judges, and John A. Jarvey, District Judge.*

Per Curiam Opinion

---

*The Honorable John A. Jarvey, District Judge for the Southern District
of Iowa, sitting by designation.

**COUNSEL**

Sean K. Kennedy, Federal Public Defender, and Jonathan D. Libby (argued), Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

André Birotte Jr., United States Attorney, Christine C. Ewell, Assistant United States Attorney, Chief, Criminal Division, and Jennifer M. Resnik (argued), Assistant U.S. Attorney, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

PER CURIAM:

Javier Anaya-Acosta ("Anaya-Acosta") appeals his December 3, 2009 conviction for being an illegal alien in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(5)(A). Anaya-Acosta argues that, because he was subject to a departure control order issued pursuant to 8 C.F.R. § 215.2, he was not illegally in the United States, as required for a conviction under § 922(g)(5)(A), when he possessed the firearm and ammunition. He contends that the district court erred in denying his motion for judgment of acquittal and that it improperly instructed the jury as to whether he was legally within the United States.

Because we find that the issuance of a departure control order does not modify an alien's immigration status and is not equivalent to being paroled into the United States, we affirm Anaya-Acosta's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Anaya-Acosta is a native and citizen of Mexico, and he admitted to entering the United States without inspection on

or about December 17, 1997. On July 27, 2007, an immigration judge issued an order granting Anaya-Acosta the opportunity to voluntarily depart before August 2, 2007, with an alternative order of removal. However, on October 17, 2007, Immigration and Customs Enforcement ("ICE") served Anaya-Acosta with a departure control order that required him to remain in the country until its revocation. The order was issued at the request of the Los Angeles Police Department because Anaya-Acosta was a material witness in a state murder case. Anaya-Acosta was not held in custody while he awaited that trial.

While under the departure control order, Anaya-Acosta was arrested in California on May 8, 2009 for being an illegal alien in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(5)(A). Anaya-Acosta admitted to possessing the loaded firearm and to being a native and citizen of Mexico. At trial, he challenged only the illegality of his presence in the United States. He argued that the departure control order, which temporarily prohibited him from leaving the United States, rendered him legally within the country when he possessed the firearm. The district court denied Anaya-Acosta's motion for judgment of acquittal on this issue, and a jury convicted him.

## STANDARD OF REVIEW

We review a district court's denial of a motion for judgment of acquittal and its interpretation of the elements of a criminal statute de novo. *United States v. McNeil*, 320 F.3d 1034, 1035 ( 9th Cir. 2003) (citing *United States v. Hardy*, 289 F.3d 608, 612 (9th Cir. 2002)); *United States v. Carranza*, 289 F.3d 634, 642 (9th Cir. 2002). To the extent Anaya-Acosta challenges the jury instructions given by the district court on the elements of the offense charged, the standard of review is also de novo. *United States v. Perdomo-Espana*, 522 F.3d 983, 986 (9th Cir. 2008).

## DISCUSSION

To sustain a conviction under § 922(g)(5)(A), the government must prove that Anaya-Acosta was "illegally or unlawfully in the United States" when he possessed the firearm. Accordingly, we must determine what effect, if any, a departure control order has on the legality of an alien's presence in the country for purposes of § 922(g)(5)(A). Anaya-Acosta contends that the departure control order cured his illegal status by modifying the immigration judge's order for voluntary departure or removal. We disagree and hold that a departure control order does not affect the legal status of an alien's presence in the United States under § 922(g)(5)(A).

**[1]** The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is charged with promulgating regulations under § 922. Because the statute itself is silent as to the meaning of "illegally or unlawfully in the United States," we defer to the ATF's interpretation. *Chevron, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844-45 (1984); *United States v. Lopez-Perera*, 438 F.3d 932, 935 (9th Cir. 2006). The regulation interpreting § 922(g)(5)(A) reads, in pertinent part, as follows:

> Alien illegally or unlawfully in the United States. Aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant or parole status. The term includes any alien —
>
> (a) Who unlawfully entered the United States without inspection and authorization by an immigration office and who has not been paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act (INA);
>
> . . .
>
> (d) Under an order of deportation, exclusion, or removal, or under an order to depart the United

States voluntarily, whether or not he or she has left the United States.

27 C.F.R. § 478.11. We find that Anaya-Acosta was illegally in the country and remained so as a matter of law under both of the foregoing subsections of the regulation.

**[2]** We reached a similar result in *United States v. Latu*, 479 F.3d 1153 (9th Cir. 2007), in which the defendant was convicted under § 922(g)(5)(A) despite being allowed to remain in the country while his non-frivolous application for adjustment of status was pending. Latu's conviction was affirmed as the Court stated, "absent a statute preventing Latu's removability upon the filing of his application for adjustment of status," his presence remained illegal or unlawful under § 922(g)(5)(A) as interpreted by 27 C.F.R. § 478.11. *Id.* at 1159. *See also United States v. Bravo-Muzquiz*, 412 F.3d 1052 (9th Cir. 2005) (finding that defendant was unlawfully in the United States under § 922(g)(5)(A) despite having been released on an immigration bond pending conclusion of his removal proceedings). Similarly, there is no legal authority indicating that Anaya-Acosta's immigration status is affected by the departure control order, which ICE can revoke at any time. We find that Anaya-Acosta's status is legally indistinguishable from Latu's.

**[3]** Alternatively, Anaya-Acosta argues that his presence in the United States at the time of his arrest was the equivalent of being "paroled" into the country pursuant to 8 U.S.C. § 1182(d)(5), thus excluding him from the operation of § 478.11(a). Again, we disagree.

**[4]** The Attorney General has discretionary authority to grant parole "for urgent humanitarian reasons or significant public benefit" to any alien applying for admission to the United States. 8 U.S.C. § 1182(d)(5)(A). Anaya-Acosta cites no authority to support his claim that a departure control order is equivalent to parole. Indeed, parole is granted only to aliens

who have not yet entered the United States and who must be inspected by immigration officers before entering. 8 U.S.C. §§ 1182(d)(5), 1225(a)(3); 8 C.F.R. § 1.1(q).

Anaya-Acosta, in contrast, had already illegally entered the country without inspection or authorization, and he was ordered to leave. His reliance upon the ATF's exclusion for paroled aliens is therefore misplaced due to his pre-existing unlawful entry and illegal status. If the ATF wished to create an exclusion for aliens under departure control orders in addition to aliens paroled into the country, it could have done so, but it did not.

**[5]** Moreover, Anaya-Acosta ignores the disjunctive nature of § 478.11. Section § 478.11(d) includes any alien "under an order to depart the United States voluntarily, whether or not he or she has left the United States." This section clearly reaches Anaya-Acosta's presence in the United States under the departure control order. Thus, even assuming § 478.11(a) is somehow inapplicable to Anaya-Acosta, he would still be illegally here under § 478.11(d).

**[6]** Finally, Anaya-Acosta contends that "he had, in essence, already departed the United States" upon ICE's grant of voluntary departure, and that he never thereafter illegally entered the United States to bring him within § 478.11(a), despite his admission of having entered without inspection or authorization in 1997. He cites cases holding that an alien has not entered the country unless the alien is free from official restraint, *see, e.g., Lopez-Perera*, 438 F.3d at 935; *United States v. Lombrera-Valdovinos*, 429 F.3d 927, 929 (9th Cir. 2005), and argues that after his voluntary "departure," he was not free from official restraint inside the United States because he was under the informal supervision of the Los Angeles Police Department. Anaya-Acosta does not cite, and we have not found, a single case to support his contention that an alien, having entered the country illegally and having been ordered to leave, should be treated as having departed without

actually doing so. Anaya-Acosta's contention that his presence was not illegal because "he had, in essence, already departed the United States" ignores both reality and the plain language of § 478.11(d), which provides that an alien is unlawfully present if "under an order to depart the United States voluntarily, whether or not he or she has left the United States."

## CONCLUSION

**[7]** The district court properly denied Anaya-Acosta's motion for acquittal and correctly instructed the jury on the elements of the offense charged against him. His conviction is **AFFIRMED**.