**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    15-30156 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00008-WFN-36 |
| v. | |
| KARLYNN ROMEO TONES, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    15-30194 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00008-WFN-8 |
| v. | |
| DONTA LYVOID BLACKMON, | |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    15-30200 |
| Plaintiff-Appellee, | D.C. No. |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

|                          | 2:13-cr-00008-WFN-1 |
|--------------------------|---------------------|
| v.                       |                     |
| ARVIN TERRILL CARMEN,    |                     |
| Defendant-Appellant.     |                     |

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, District Judge, Presiding

Argued and Submitted December 3, 2018
Seattle, Washington

Before: W. FLETCHER, BYBEE, and WATFORD, Circuit Judges.

Arvin Carmen, Karlynn Tones, and Donta Blackmon ("defendants") appeal their convictions for conspiracy to distribute controlled substances. Carmen also appeals his conviction for participation in a continuing criminal enterprise ("CCE"). The three were among sixty-two individuals charged with participating in a large conspiracy to smuggle oxycodone pills from Los Angeles for distribution in Spokane, Washington. On appeal, defendants raise twenty-two issues: twelve common to all three, five specific to Carmen, three specific to Tones, and two specific to Blackmon. None of their arguments is meritorious. We affirm defendants' convictions and sentences in full.

## I.  ISSUES COMMON TO ALL DEFENDANTS

1. *Sufficiency of the Evidence.*  The district court correctly concluded that sufficient evidence supported the jury's guilty verdicts on the conspiracy charge. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010).  Evidence is sufficient to support a conviction if, viewed in the light most favorable to the government, it would allow "any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *Id*.  The essential elements of conspiracy to distribute a controlled substance are "(1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001).

Here, the government introduced sufficient evidence to convict all three defendants on the conspiracy charge.  The evidence against Carmen included the testimony of several co-defendants detailing how he recruited them and others to sell oxycodone and smuggle cash for him.  The evidence against Tones included testimony from co-defendants and law enforcement officers describing his involvement in Carmen's organization as a distributor.  The evidence against Blackmon included testimony from co-defendants about how Carmen recruited Blackmon into the organization and how Blackmon agreed to sell oxycodone for Carmen.  Viewed in the light most favorable to the government, this evidence was

3

sufficient for a rational juror to conclude that defendants agreed to sell oxycodone and intended to do so.

2. *Scope of Closing Argument.* The district court was within its "great latitude" and "broad discretion" in restricting the scope of defense counsel's closing arguments. *United States v. Doe*, 705 F.3d 1134, 1149 (9th Cir. 2013). The indictment charged defendants and fifty-nine others with participating in a single overarching conspiracy. Defense counsel sought to argue that not only did defendants not participate in this overarching conspiracy, no such single conspiracy existed—rather, there were only multiple smaller conspiracies. The district court allowed the "multiple conspiracies" argument but did not permit defense counsel to argue that the overarching conspiracy did not exist because, by the time of trial, fifty-five indicted co-defendants had pleaded guilty to participating in that conspiracy.

We conclude that the district court acted within its discretion. Defendants were permitted to vigorously argue their theory of defense: that they participated only in separate conspiracies. In particular, they contended that the alleged co-conspirators split into competing crews, that associations with Carmen were temporary, and that there never was a single cohesive enterprise. Thus, the court's

4

limitation did not deny defendants "the right to make final arguments on [their] theory of the defense." *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 1999).

3. *Constructive Amendment of Count 2*. The district court did not plainly err by constructively amending Count 2 of the indictment in its instructions to the jury. *See United States v. Olano*, 507 U.S. 725, 732 (1993). Count 2 alleges that sixty-two named co-conspirators "and others not known to the Grand Jury" conspired to distribute oxycodone. Defendants argue that the district court deviated materially from the indictment by not requiring the trial jury to find that each of the sixty-two persons named in the indictment participated in the conspiracy. They cite no precedent from this or any other court vacating a conspiracy conviction because the jury was not instructed to find that each individual named in the indictment—including those not on trial who had already pleaded guilty—participated in the conspiracy. Because they present a novel theory of error, we conclude that no error could have been "plain"; that is, "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

4. *Specific Unanimity Instruction*. Defendants argue that the district court erred in not specifically instructing the jury to reach unanimous agreement on the duration or membership of the overarching conspiracy. Below, defendants

5

requested a specific unanimity instruction only as to the duration, so we review the district court's duration instruction for abuse of discretion, *see United States v. Franklin*, 321 F.3d 1231, 1240–41 (9th Cir. 2003), and its membership instruction for plain error, *see Jones v. United States*, 527 U.S. 373, 388 (1999). The district court did not abuse its discretion in not giving a specific unanimity instruction on the duration of the conspiracy because there was "no genuine possibility of juror confusion or that a conviction may [have] occur[red] as the result of different jurors concluding that the defendant committed different acts." *United States v. Lapier*, 796 F.3d 1090, 1099 (9th Cir. 2015). Of note, the indictment listed the start and end dates of the conspiracy, and the evidence at trial fell within that time period. *See United States v. Anguiano*, 873 F.2d 1314, 1320 (9th Cir. 1989). Further, we conclude that the district court did not plainly err in not giving a specific unanimity instruction on membership because defendants cite to no "clear or obvious" authority requiring such an instruction. *Puckett*, 556 U.S. at 135.

5. *Overt Act Instruction.* On de novo review, the district court did not err in not requiring the jury to find an overt act in furtherance of the conspiracy. *See United States v. Anaya-Acosta*, 629 F.3d 1091, 1093 (9th Cir. 2011) (per curiam). The indictment charged defendants with conspiracy to distribute a controlled substance "in violation of 21 U.S.C. § 846." "In order to establish a violation of 21

6

U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy." *United States v. Shabani*, 513 U.S. 10, 15 (1994).

6. *Plea Agreements*. The district court did not abuse its discretion by limiting the scope of defense counsel's cross-examination of cooperating witnesses who had entered into plea agreements. *See United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007) (en banc). Defendants contend that these limits violated the Confrontation Clause. The district court permitted defense counsel to ask these witnesses about the terms of their plea agreements, under which the government would seek reduced sentences in exchange for truthful testimony, and to establish that these witnesses had an incentive to testify. It did not permit defense counsel to ask about the maximum or mandatory minimum penalties the cooperating witnesses would have faced if they had stood trial and been convicted.

We apply a three-factor test to determine whether limitations on cross-examination violate a defendant's Confrontation Clause rights: "(1) whether the excluded evidence was relevant; (2) whether other legitimate interests outweighed the defendant's interest in presenting the excluded evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness the defendant was attempting to cross-examine." *United States v. Cazares*, 788 F.3d 956, 983–84 (9th Cir. 2015). Here, the maximum and

7

mandatory minimum penalties the cooperating witnesses faced were only slightly relevant as impeachment evidence. The government had a significant interest in not permitting testimony about the maximum or mandatory minimum penalties for the very same crimes defendants were charged with, and defense counsel proffered sufficient admissible impeachment evidence to permit the jury to properly evaluate the credibility of the cooperating witnesses.

Further, the district court did not violate the Confrontation Clause by preventing defense counsel from asking a cooperating witness who had asserted his Fifth Amendment privilege against self-incrimination about the specifics of offenses for which he faced pending charges.

7. *Law Enforcement Reports.* The district court did not abuse its discretion in declining to admit statements of two cooperating witnesses in law enforcement reports that they had not seen to impeach them or refresh their recollection. *See United States v. Beltran*, 165 F.3d 1266, 1269 (9th Cir. 1999). Although we have permitted "recollection [to] be refreshed from documents made by persons other than the witness," *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978), as a general rule, a third party's characterization of a witness's statement is not attributable to the witness for impeachment purposes. *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980). The district court took the correct approach by

instructing defense counsel to ask the witnesses whether they had made the statements in the reports, and if they denied making them, to call the law enforcement officers who prepared the reports.

8. *Partial Courtroom Closure.* The district court did not violate defendants' Sixth Amendment right to a public trial by excluding co-defendant Mercedes Reeves and her associates from the courtroom after one associate made a threatening gesture toward a testifying witness. A district court may order a partial courtroom closure—the exclusion of specific individuals—that is "narrowly tailored . . . to satisfy the purpose for which it was ordered" if the judge (1) holds a hearing on the closure, (2) makes factual findings to support the closure, and (3) considers reasonable alternatives to closure. *United States v. Sherlock*, 962 F.2d 1349, 1357–59 (9th Cir. 1989). Here, the district court held a hearing and published a detailed order narrowly tailoring the closure to Reeves and her associates. The order contained a detailed analysis of facts, including Reeves's inappropriate conduct, and gave full consideration to Reeves's motion to lift the closure. Thus, there was no Sixth Amendment violation.

9. *Mixed Fact and Opinion Testimony.* The district court's jury instructions distinguishing between fact and opinion testimony did not constitute plain error. *Jones*, 527 U.S. at 388. At trial, three law enforcement officers gave both fact and

9

opinion testimony.  The district court explained the distinction between the types of testimony informally during trial and formally during jury instructions but did not use the model instructions on fact and opinion testimony.  "[T]he ultimate responsibility for assuring the reliability of expert testimony and for instructing the jury on how to evaluate case agent dual role testimony rests with the district court." *United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015) (citation omitted).  We are satisfied that the district court fulfilled this responsibility.

10. *Summary Slideshow of Telephone Records*.  The district court did not abuse its discretion in permitting a government analyst witness to refer to a slideshow that summarized voluminous telephone records.  *See United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012).  Defendants argue that the slideshow was inadmissable hearsay and that the analyst who presented the slideshow gave opinion evidence based on hearsay.  However, the district court did not permit the analyst to give opinion testimony, and defense counsel did not make any substantive objections to the analyst's fact testimony.  Further, defendants' hearsay argument lacks merit.  The district court did not admit the slideshow into evidence—it allowed the jury to see it only as a summary accompanying live testimony.  Defendants stipulated to the authenticity of the underlying toll records, which fit within the hearsay exception for business records.  And they did not

object to the foundation for attributing each phone to a person, which was laid throughout trial.

11. *Wiretap Evidence.* On de novo review, the district court did not err in admitting evidence the government obtained from wiretaps of six telephones. *See United States v. Reyna*, 218 F.3d 1108, 1110 (9th Cir. 2000). Title III of the Omnibus Crime Control and Safe Street Act of 1968 allows a district court to authorize a wiretap where the government has met particularity, probable cause, and necessity requirements. 18 U.S.C. § 2518.

On the particularity prong, defendants point to no authority requiring the government to describe the drug-trafficking operation to be targeted by the wiretaps. *See United States v. Kahn*, 415 U.S. 143, 151 (1974) (requiring that the specific *person* targeted by the investigation be named but not requiring details on the structure of the suspected criminal organization).

On the probable cause prong, defendants principally argue that the government proffered insufficient facts to establish probable cause for the wiretap of Target Telephone 1 (TT1). The government was required to establish that: (1) an individual was committing, had committed, or was about to commit drug trafficking offenses; (2) relevant communications would be intercepted; and (3) the targeted individual would use the targeted phone. *United States v. Meling*, 47

F.3d 1546, 1551–52 (9th Cir. 1995). The government satisfied this burden by providing evidence from six confidential sources, including one who discussed an oxycodone transaction with the targeted individual on the line to be tapped and two who observed her distributing oxycodone.

On the necessity prong, the government was required to submit "a full and complete statement" as to whether or not other investigative procedures have been tried and failed or why they appear reasonably unlikely to succeed or be too dangerous. *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005). The necessity requirement is "directed to the objective of the investigation as a whole and not to any particular person." *United States v. Reed*, 575 F.3d 900, 911 (9th Cir. 2009). The government's affidavit, which extensively detailed the various methods of traditional surveillance it employed, more than satisfied this requirement.

Because the TT1 wiretap was lawful, we reject defendants' argument that the other wiretaps were unlawful as "fruits of the poisonous tree."

12. *Cumulative Error.* As we have identified no error on the above questions, defendants' cumulative error argument is not relevant.

## II.  ISSUES SPECIFIC TO CARMEN

1. *Continuing Criminal Enterprise (CCE) Charge.*  The district court did not plainly err in its general jury instruction on the CCE charge.  *See United States v. Jerome,* 942 F.2d 1328, 1331 (9th Cir. 1991).  To convict Carmen of the CCE offense, the government was required to prove that he organized, supervised, or managed five or more other persons as part of a continuing series of violations of federal narcotics law.  *Id.* at 1330; *see* 21 U.S.C. § 848(c)(2).  The government named twenty-three individuals who Carmen may have organized, supervised, or managed, first in writing to the district court and then to the jury.  Carmen argues that, as a matter of law, at least some of these individuals could not have been organized, supervised, or managed by him, and that the jury's general verdict cannot stand if it may have relied upon a legally erroneous finding.

We conclude that the government laid sufficient foundation at trial to support an inference that each of the twenty-three named individuals may have been organized, supervised, or managed by Carmen within the meaning of § 848(c)(2).  Thus, the district court did not err in accepting a general verdict of guilty on the CCE charge, as the jury could have permissibly chosen *any* five of the twenty-three named individuals as the five required persons subject to Carmen's control.

13

2. *Specific Unanimity Instruction on CCE Charge.* Further, the district court did not plainly err in its specific unanimity instruction on the CCE charge. Carmen argues that the instruction misled the jury by directing it to unanimously agree on which of Carmen's confederates were involved in the criminal enterprise instead of which ones Carmen had organized, supervised, or managed. In context, this argument is without merit, as the challenged instruction contains two references to the requirement that Carmen organize, supervise, or manage five persons, and the jury's verdict form required it to find that Carmen "acted as an organizer, supervisor or manager of at least five or more persons with all [jurors] agreeing as to the specific five or more persons."

3. *Government's Change in Theory.* The district court did not plainly err in allowing the government to advance a theory of its case that differed from the theory it described in a letter it produced during discovery. We decline to construe this letter as a bill of particulars because the district court denied Carmen's request for a bill before trial. Carmen cites no authority which suggests the district court erred; thus, we find no "clear or obvious" error. *Puckett*, 556 U.S. at 135.

4. *Constructive Amendment of Count 1.* The district court did not plainly err by constructively amending Count 1 of the indictment, which charged Carmen with the CCE offense. The indictment listed three narcotics violations sufficient to

14

support a conviction on Count 1. Jury Instruction 7 repeated these three violations and added the conspiracy to distribute controlled substances violation that the indictment charged in Count 2. We have held that a CCE indictment does not need to enumerate every specific offense that may support a jury's finding on the "continuing series of violations" element. *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1578 (9th Cir. 1989). There is thus no plain error.

5. *Possession with Intent to Distribute.* Carmen asks us to review the sufficiency of the evidence underlying his conviction for possession of a controlled substance with intent to distribute. However, Carmen concedes that he did not file a notice of appeal on this count. Because "[a]n appeal permitted by law as of right . . . may be taken *only* by filing a notice of appeal with the district clerk within the time allowed by Rule 4," *Manrique v. United States*, 137 S. Ct. 1266, 1271 (2017) (emphasis in original) (quoting Fed. R. App. P. 3), we do not reach this question.

### III. ISSUES SPECIFIC TO TONES

1. *Post-Arrest Interview Video.* Tones contends that the government violated his Fifth Amendment right to a fair trial by playing a video of his post-arrest interview with two police officers. As he did not object to this video below, we review for plain error. *See Olano*, 507 U.S. at 732. To the extent that any plain error exists here, we conclude that it is more probable than not that the error did

15

not materially affect the verdict and thus was harmless. *See United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002).

In the arrest video, the officers accuse Tones of lying and suggest that he is guilty of drug offenses. Tones argues that the officers' statements are hearsay and are an impermissible direct opinion on the ultimate question of his guilt or innocence. *See United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988). Even if we assume that the district court plainly erred, the video was a very small part of the government's case, and we may conservatively conclude that the jury's guilty verdict in no way depended on the officers' recorded insinuation that Tones was guilty. One of the two officers in the video testified at trial to the facts underlying the opinion of guilt he expressed on tape, and there was an overwhelming amount of testimonial and forensic evidence of Tones's guilt that he does not contest on appeal.

2. *Confrontation Clause.* Tones further argues that the officers' statements in the video were testimonial evidence against him, and the Confrontation Clause guaranteed him the opportunity to cross-examine both officers. Because the government only produced one of the two officers as a trial witness, Tones contends that admission of the other officer's statements on video violated his Sixth Amendment rights. To the extent that such a violation occurred, we find it

16

harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Our analysis of whether a Confrontation Clause error was harmless includes "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* Here, the testimony was unimportant, cumulative, and corroborated by trial testimony on all points: the government played the video while one of the two officers was on the witness stand, and this officer answered additional questions from both government and defense lawyers about the investigation and interview. Tones does not argue that the absent officer's recorded statements were materially distinguishable from the testifying officer's. Finally, the government's overall case, which included wiretap evidence and testimony from Tones's co-defendants, was very strong. Any Confrontation Clause error was thus harmless.

3. *Sentencing.* Tones argues that the district court erred in calculating his Guidelines offense level because it relied on an inaccurate estimate of the number of pills he and his partner sold in their jointly undertaken criminal activity. The

17

district court committed no such error:  it relied on a pre-sentence investigative report ("PSR") that evaluated the trial evidence and made conservative estimates of the number of pills Tones and his partner sold to testifying witnesses and confidential sources.  Critically, the district court did not blindly adopt the PSR's recommendations but satisfied its obligation to resolve factual disputes by addressing Tones's objections at a hearing.

Further, the district court did not clearly err in declining to apply a downward adjustment to Tones's offense level for acceptance of responsibility. *See United States v. Cantrell*, 433 F.3d 1269, 1284 (9th Cir. 2006).  This adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  U.S.S.G. § 3E1.1, cmt. n.2.

## IV.  ISSUES SPECIFIC TO BLACKMON

1. *Career Offender Designation.*  On de novo review, the district court did not err in sentencing Blackmon as a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. *See United States v. Kelly*, 422 F.3d 889, 891–92 (9th Cir. 2005).  A career offender is one with two or more past felony convictions for "crimes of violence" or controlled-substance offenses.  U.S.S.G. § 4B1.1(a).  Blackmon has a prior

18

conviction in Washington state for kidnapping in the first degree, and the Application Notes following § 4B1.2 instruct us to consider "kidnapping" as a crime of violence. Upon review of the Washington kidnapping statute, Wash. Rev. Code § 9A.40.020, we conclude that Blackmon's conviction qualifies as a crime of violence under § 4B1.1(a) (2014). Blackmon's second qualifying predicate conviction is a marijuana offense in violation of California Health & Safety Code § 11359. *See United States v. Sandoval-Venegas*, 292 F.3d 1101, 1107 (9th Cir. 2002) (recognizing this offense as "comfortably fit[ting] within the Guidelines definition" of a controlled-substance offense). Because California defined this offense as a felony at the time it convicted Blackmon, and continued to do so at the time he was sentenced in this case, it is immaterial that California has since reclassified this crime as a misdemeanor and that Blackmon successfully petitioned to have the conviction reduced to a misdemeanor. *See United States v. Diaz*, 838 F.3d 968, 972 (9th Cir. 2016) (a state's retroactive adjustment of penalties does not "rewrite history for purposes of the administration of the federal criminal law").

2. *Severance.* Blackmon argues that the district court abused its discretion in failing to sever the defendants' trials. This argument is meritless because he has presented no evidence that the joint trial was "so manifestly prejudicial" as to leave

the district court with no choice but to order separate trials. *United States v. Barragan*, 871 F.3d 689, 701 (9th Cir. 2017).

*   *   *

For the foregoing reasons, each defendant's conviction and sentence is

**AFFIRMED**.[1]

---

[1] Carmen's motion to supplement the record on (Dkt. No. 59), filed June 19, 2017, is GRANTED.