PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

BENJAMIN FRANKLIN SCOTT, a/k/a
Benjamine Johnson, a/k/a
Benjamine Cox, a/k/a Marik
Jefferson, a/k/a Benjamine Scott,
                    *Defendant-Appellant.*

No. 04-4649

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CR-02-27)

Argued: May 26, 2005

Decided: September 20, 2005

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge Michael wrote the opinion, in which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** Brian Joseph Kornbrath, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Thomas Edward Johnston, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Wheeling, West Virginia, for Appellee. **ON BRIEF:** Robert H. McWilliams, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

---

**OPINION**

MICHAEL, Circuit Judge:

Benjamin Franklin Scott appeals his conviction under 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. He argues that the jury instructions were misleading because they did not adequately explain that intent to possess is an element of this crime when the government proceeds under a constructive possession theory. The instructions were not misleading on the intent requirement, and we therefore affirm.

I.

Scott was charged in a one-count indictment as a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). At the two-day trial that began on April 26, 2004, the government and Scott presented quite different versions of events. Government witnesses testified to the following version. On the night of October 26, 2001, Scott and three of his friends went to a bar in Clarksburg, West Virginia, to play some pool. Before long, Scott got into an argument with another patron. After the argument moved outside to the parking lot, the patron shot and wounded two of Scott's friends, who were among the bystanders. The patron (or shooter) then fled the scene. Scott, who was incensed by the shootings, got into his car and drove away, accompanied by his third friend, Derek Henderson. Scott drove to a fourth friend's house where he went inside for a few moments. After Scott and Henderson departed this location, Scott, who was still driving, told Henderson that he was headed for the shooter's house. As they drove along, Scott spotted a man he knew and stopped the car; Scott got out of the car and had a brief conversation with the man. Upon returning to the car, Scott directed Henderson to drive, and Scott took the passenger's seat. As Henderson was driving, Scott showed him a gun he (Scott) was carrying. A few

minutes later the car was stopped by the police, and an officer saw a gun being thrown out of the passenger side window. According to Henderson, Scott threw the gun out of the car. Scott evaded the police initially, but was arrested a short time later.

Scott testified as the only defense witness and offered the following account. The argument in the bar was between one of Scott's friends and the eventual shooter, and Scott tried to diffuse the situation. After the shooting Scott was approached by his cousin, Trapper, who introduced him to a man named Aaron. Trapper said he and Aaron knew where the shooter lived, and they could take Scott and Henderson to that location. Scott, Henderson, Trapper, and Aaron all got into Scott's car, and Scott first drove to where Trapper and Aaron lived. On the way, Henderson and Trapper had agreed that they needed a gun, and Scott was aware of this agreement. Trapper retrieved a gun from his house, got back into the car, and gave the gun to Aaron. Scott then told the others that he wanted no part of the situation and that they should just go to the hospital and visit their injured friends. Scott continued driving, but soon stopped at a gas station. Trapper left the group at that point, claiming that he could not accompany them further because he had a professional relationship with the shooter that he did not wish to jeopardize. Scott wanted to give up the driving duties, but he took the wheel once again after an argument with Henderson. Aaron directed Scott to the shooter's house. Upon arriving, all three men got out of the car, but only Henderson and Aaron approached the house. By this time Henderson had physical possession of the gun. The shooter was not at home, so Scott suggested to Henderson that he return the gun to Aaron and that they go directly to the hospital. Aaron, however, had disappeared, and Scott flatly refused to continue driving if the gun remained in the car. Henderson then took over driving duties, and he and Scott were soon stopped by the police. According to Scott, it was Henderson, from the driver's seat, who tossed the gun out of the passenger side window.

Scott's defense was based on the theory that under § 922(g)(1) a felon's actual or constructive possession of a firearm must be voluntary and intentional. As a factual matter, Scott contended that while he knew a passenger in his car had physical possession of a gun, he (Scott) never had the subjective intent to exercise dominion and control over the gun. Scott therefore requested a jury instruction stating

that constructive possession is established by proof that the defendant either (1) intentionally exercised dominion and control over the firearm or (2) had both the power and intention to exercise dominion and control over the firearm. The district court declined to give an instruction in the form Scott requested. Instead, the court, relying on *United States v. Shorter*, 328 F.3d 167 (4th Cir. 2003), and *United States v. Gallimore*, 247 F.3d 134 (4th Cir. 2001), instructed the jury that "[c]onstructive possession exists when the defendant exercises, or has the power to exercise[,] dominion and control over the item" in question. J.A. 239. In other parts of the instructions the court advised the jury that the defendant had to "knowingly possess[ ]" a firearm and that "'knowingly' . . . means . . . the act was done voluntarily and intentionally." J.A. 246, 238. These instructions allowed Scott's lawyer to argue to the jury that Scott did not have constructive possession of the gun because he did not intend to exercise dominion and control over it. Scott nevertheless objected to the instructions on the ground that, when taken as a whole, they did not make it sufficiently clear that constructive possession must be intentional.

The complete version of the relevant instructions is as follows:

The word "knowingly," as that term will be used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of ignorance, mistake or accident.

. . . .

To "possess" means to exercise dominion and control or authority over something at a given time. The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct and physical control over a thing, at a given time, is then in actual possession of it.

Whether the defendant constructively possessed the firearm in question, or was merely present where the firearm was found, is a fact you must determine based on all the evidence. Proof that the defendant constructively possessed the

firearm is sufficient proof of the possession element to support conviction.

Constructive possession exists when the defendant exercises, or has the power to exercise[,] dominion and control over the item.

. . . .

To find the defendant guilty . . . the Government must prove . . . beyond a reasonable doubt:

. . . .

. . . that the defendant knowingly possessed a firearm;

. . . .

The Government need only prove that the defendant knowingly possessed an object, actually or constructively, and that he knew it was in fact a firearm.

J.A. 238-39, 246-47.

The jury returned a guilty verdict, and Scott was sentenced as an armed career criminal to 260 months imprisonment and five years of supervised release. Scott appeals, arguing that the district court committed reversible error because its jury instructions did not clearly explain that constructive possession of a firearm under § 922(g)(1) must be accompanied by an intent to possess the firearm.

## II.

We will not vacate a conviction on the basis of an erroneous jury charge "if 'viewed as a whole and in the context of the trial, the charge was not misleading and contained an adequate statement of the law.'" *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1407 (4th Cir. 1993) (quoting *United States v. Park*, 421 U.S. 658, 675 (1975)). "We review de novo the legal question of

whether a district court has properly instructed a jury on the statutory elements of an offense." *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996).

## A.

Before we analyze the district court's specific instructions on constructive possession and intent, we consider whether intent is a necessary element of the § 922(g)(1) crime when the government alleges constructive possession. Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm . . . which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Section 924(a)(2) provides that "[w]hoever *knowingly violates*" § 922(g) "shall be fined as provided in this title, imprisoned not more than 10 years, or both." *Id.* § 924(a)(2) (emphasis added).

We outlined the statutory elements of a § 922(g)(1) gun possession crime in *United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) (en banc), a case in which the defendant challenged the adequacy of his jury instructions. There we confirmed that § 922(g)(1), which was enacted as part of the Firearms Owners' Protection Act of 1986, Pub. L. 99-308, § 102, 100 Stat. 449, 452, is not a strict liability crime. *Langley*, 62 F.3d at 604. We explained that although § 922(g)(1) does not itself include an intent element, the section's penalty provision, § 924(a)(2), requires a knowing violation of the statute. *Id.* We therefore concluded that the jury was properly instructed when it was told that it should convict if the government proved the following elements: "(1) [the defendant] had been convicted in some court of a crime punishable by a term of imprisonment exceeding one year; (2) he thereafter *voluntarily and intentionally* possessed a firearm; and (3) the firearm had been shipped or transported in interstate or foreign commerce at some point during its existence." *Id.* (emphasis added). Our en banc court in *Langley* thus made clear that a felon's possession of a firearm must be both voluntary and intentional to be punishable under § 922(g)(1), and our subsequent panel opinions have adhered to this standard. *See, e.g.*, *Gallimore*, 247 F.3d at 136, *United States v. Hobbs*, 136 F.3d 384, 390 (4th Cir. 1998); *Rahman*, 83 F.3d at 93.

The possession component of a § 922(g)(1) crime may be established with proof of either actual or constructive possession. *See Rahman*, 83 F.3d at 93. "Actual possession" is defined as "[p]hysical . . . control over property." Black's Law Dictionary 1201 (8th ed. 2004). "Constructive possession," as defined by our cases, occurs when a person "exercise[s], or ha[s] the power to exercise, dominion and control over [an] item" of property. *Shorter*, 328 F.3d at 172 (internal quotation marks omitted); *Gallimore*, 247 F.3d at 137 (internal quotation marks omitted).* The government suggests, halfheartedly in our estimation, that because this definition of constructive possession does not mention intent, its prosecutors are excused from proving intent in constructive possession cases brought under § 922(g)(1). We reject this argument for several reasons. Neither the definition of actual possession nor the definition of constructive possession contains an intent component. The intent element is specified in the statute, however. Congress recognized that in some circumstances the possession of a firearm could be unknowing or unintentional, and it therefore made explicit in the penalty provision, § 924(a)(2), that intent is an element of the § 922(g)(1) crime. We acknowledged this in *Langley* when we approved a jury instruction explaining that a defendant must have "voluntarily and intentionally possessed a firearm" in order to be convicted under § 922(g)(1). 62 F.3d at 604. Neither the statute nor *Langley* makes any distinction between actual and constructive possession insofar as the intent requirement is concerned.

Thus, when the government seeks to establish actual possession under § 922(g)(1), it must prove that the defendant voluntarily and intentionally had physical possession of the firearm. When the government seeks to establish constructive possession under § 922(g)(1), it must prove that the defendant intentionally exercised dominion and control over the firearm, or had the power and the intention to exercise dominion and control over the firearm. Constructive possession of the firearm must also be voluntary. Our juries should be instructed accordingly. Other circuits, by the way, have approved similar instructions. *See, e.g., United States v. Gunn*, 369 F.3d 1229, 1235

---

*This definition allows the government to prove constructive possession of an item in instances when a defendant has dominion and control over the premises or vehicle where the item is located. *See, e.g., Shorter*, 328 F.3d at 169-70, 172; *Gallimore*, 247 F.3d at 136-37.

(11th Cir. 2004); *United States v. Gaines*, 295 F.3d 293, 301 (2d Cir. 2002); *United States v. Walls*, 225 F.3d 858, 866-67 (7th Cir. 2000); *United States v. Terry*, 911 F.2d 272, 279-80 (9th Cir. 1990); *United States v. Eaton*, 808 F.2d 72, 74 (D.C. Cir. 1987).

B.

Now that we have made clear that a felon's constructive possession of a firearm must be intentional to be a violation of § 922(g)(1), we turn to Scott's argument that the district court failed to instruct the jury adequately that intent to possess must attend constructive possession. We reject Scott's argument because the jury instructions, "viewed as a whole and in the context of the trial, [were] not misleading and contained an adequate statement of the law to guide the jury's determination" on the intent issue. *United Med. & Surgical Supply Corp.*, 989 F.2d at 1407 (internal quotation marks omitted).

We conclude that, taken as a whole, the jury instructions were adequate to inform the jury that a felon's constructive possession of a firearm must be intentional to be illegal under § 922(g)(1). The district court instructed the jury that the government had to prove beyond a reasonable doubt that Scott "knowingly possessed a firearm" and that the "knowing[ ] possess[ion]" could be either "actual[ ] or constructive[ ]." J.A. 246-47. Earlier in its instructions, the court defined "knowingly" to mean "that the act was done voluntarily and intentionally." J.A. 238. The only rub is that the court repeated the word "knowingly" when it defined actual possession, but omitted the word when it defined constructive possession. *Compare* J.A. 239 (instructing that "[a] person who knowingly has direct and physical control over a thing, at a given time, is then in actual possession of it") *with* J.A. 239 (instructing that "[c]onstructive possession exists when the defendant exercises, or has the power to exercise[,] dominion and control over the item"). Although it would have been better for the district court to have repeated the intent requirement close to its definition of constructive possession (see our formulation at the end of part II.A), the lack of repetition did not render the instructions misleading. First, the court made clear elsewhere in the instructions that either actual or constructive possession of a firearm was required and that any possession had to be knowing, that is, voluntary and intentional. Second, when the court explained constructive possession to

the jury, it was careful to draw a distinction between constructive possession and "merely [being] present where the firearm was located." J.A. 240.

Consistent with these instructions, Scott was able to present his defense, through his own testimony, that he lacked the intent to have constructive possession of the gun in question. Thus, Scott testified that (1) when Trapper obtained a gun and got back into Scott's car, Scott told his companions that he wanted no part of the situation; (2) at a later point Scott refused to continue driving if the gun remained in the car, and Henderson, who had the gun, then took over the driving duties; and (3) Henderson threw the gun out of the car. Based on this testimony and the jury instructions, Scott's lawyer argued forcefully to the jury that "Ben Scott had no intention whatsoever to . . . constructively possess that firearm." J.A. 267. Thus, because the requisite intent was missing, the lawyer added, Scott was not guilty of the federal firearms possession charge. The jury simply disagreed.

In sum, we conclude that the jury instructions, considered as a whole and in the context of the entire trial, were not misleading and adequately informed the jury that intent to possess must be proved when the government proceeds under a constructive possession theory in a § 922(g)(1) prosecution. Scott's conviction is therefore

*AFFIRMED.*