PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 12-4363

———————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

ABDULADHIM AHMED AL SABAHI,

              Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  James C. Dever III, Chief District Judge.  (4:11-cr-00056-D-1)

———————

Argued:  March 22, 2013           Decided:  June 12, 2013

———————

Before SHEDD and FLOYD, Circuit Judges, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

———————

Affirmed by published opinion.  Judge Floyd wrote the opinion, in which Judge Shedd and Judge Goodwin joined.

———————

**ARGUED:** Jorgelina E. Araneda, ARANEDA LAW FIRM, Raleigh, North Carolina, for Appellant.  Joshua L. Rogers, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

FLOYD, Circuit Judge:

On October 25, 2011, Appellant Abduladhim Ahmed Al Sabahi was charged in a four-count superseding indictment with knowingly possessing firearms while illegally and unlawfully present in the United States, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). A jury found Al Sabahi guilty of three counts. Al Sabahi appealed, alleging that he was not illegally or unlawfully present in the United States, that the district court committed a Confrontation Clause violation, and that the evidence was insufficient to support his conviction. We now affirm.

I.

A.

On November 12, 1997, Al Sabahi—a native of Yemen—entered the United States using a visa that expired in May 1998. Al Sabahi remained in the United States after his visa expired without obtaining authorization to do so. On January 10, 2003, Al Sabahi voluntarily registered with the National Security Entry-Exit Registration System (NSEERS), a War on Terror-related program pursuant to which non-immigrant men of certain ages and from certain countries were fingerprinted, photographed, and interviewed. Immigrations and Customs Enforcement then placed Al Sabahi in removal proceedings because he had overstayed his

2

visa.    In August 2003, Al Sabahi married a United States citizen, and he thereafter filed an I-485 application to legalize his presence in the United States.

At the time of the events relevant to this case, Al Sabahi worked at Scooters In and Out convenience store in Littleton, North Carolina.    On February 15, 2007, a Pepsi employee named Jonathan Mosley came to Scooters to remove a Pepsi cooler.    Al Sabahi placed a .9-millimeter pistol on the store's counter during Mosley's visit.    According to Mosley, Al Sabahi told him that he could not take the cooler.    Mosley then left the store and called his supervisor, Donald Ferguson.    When Ferguson arrived, he saw the gun and realized that Al Sabahi was not going to release the cooler.    Ferguson then called Mike Suggs, the chief of the Littleton Police Department.    Suggs did not see the gun when he arrived, but he had seen it on prior occasions. Suggs told Al Sabahi to keep the gun under the store's counter.

On March 18, 2007, Suggs and other officers were conducting a traffic checkpoint.    Officer Shane Jenkins stopped Al Sabahi, who was driving a gold Toyota Camry.    Although Ali Saleh—the owner of Scooters—owned the car, Al Sabahi frequently borrowed it.    Suggs looked down at the car's floorboard and saw part of a pistol grip.    He asked Jenkins to remove Al Sabahi from the car and then retrieved a .9-millimeter pistol from the vehicle. Suggs was familiar with the pistol and was aware that Al Sabahi

3

sometimes carried it in the vehicle. Suggs instructed Jenkins to charge Al Sabahi with carrying a concealed weapon.

On May 9, 2007, Ronald Lee came to Scooters to sell a .380-caliber handgun to Saleh. Saleh was not present at the store, so Al Sabahi took cash from the register and purchased the firearm. Lee prepared a receipt in Al Sabahi's name. When Saleh found out that Al Sabahi had bought the gun, he contacted Lee and told him that Al Sabahi was an illegal alien and should not have purchased a firearm. Lee later met with Saleh and prepared a new receipt that named Saleh as the purchaser.

Saleh testified that, on September 7, 2007, he went home and found Al Sabahi drunk, carrying the .380-caliber handgun, and claiming that it belonged to him. Al Sabahi then left with the firearm, and Saleh reported the theft to the police. Jenkins later retrieved the gun from one of Saleh's relatives.

B.

On May 24, 2011, Al Sabahi was charged in a two-count indictment with violating 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). These provisions make it a crime for "an alien . . . illegally or unlawfully in the United States" to knowingly "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(5)(A); see also id. § 924(a)(2) (subjecting individuals who knowingly violate § 922(g)(5)(A) to a fine and

4

up to ten years' imprisonment).  Al Sabahi moved to dismiss the indictment on August 12, 2011, arguing that he was not illegally or unlawfully in the United States because he registered with NSEERS and had filed an I-485 application for an adjustment of his status.  Al Sabahi also contended that only an immigration judge had jurisdiction to determine whether he was legally present in the United States because he had been placed in removal proceedings.  The district court denied Al Sabahi's motion to dismiss.

On October 25, 2011, Al Sabahi was charged once again in a four-count superseding indictment with violating 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2).  Count One concerned the February 15, 2007, incident with the .9-millimeter pistol that took place at Scooters; Count 2 related to the March 18, 2007, incident with the same gun that occurred during the traffic stop; Count Three involved the May 9, 2007, incident in which Al Sabahi purchased the .380-caliber handgun; and Count Four concerned the September 7, 2007, incident involving the same gun, which took place at Saleh's residence.

Al Sabahi's trial took place from January 23, 2012, to January 25, 2012.  At trial, Al Sabahi attempted to introduce a 911 telephone call report concerning his encounter with the Pepsi employee.  The district court held that the document did not fall within any exceptions to the rule against hearsay and

5

that, even if it did, the court would exclude it under Federal Rule of Evidence 403. A jury found Al Sabahi guilty on Counts One, Two, and Three and not guilty on Count Four. The district court sentenced Al Sabahi to twenty-seven months' imprisonment on each count, to be served concurrently. Al Sabahi filed a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We turn first to Al Sabahi's argument that the district court should not have found that he was illegally or unlawfully present in the United States. We review de novo the district court's ruling on Al Sabahi's motion to dismiss the indictment. United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002).

## A.

Federal regulations recognize that "[a]lien[s] illegally or unlawfully in the United States" include "nonimmigrant[s] . . . whose authorized period of stay has expired." 27 C.F.R. § 478.11. As a general matter,

> an alien who is only permitted to remain in the United States for the duration of his or her status . . . becomes "illegally or unlawfully in the United States" for purposes of § 922(g)(5)(A) upon commission of a status violation. We look to the date of the status violation to determine when the alien's presence

6

became unauthorized, not to when that violation is recognized by official decree.

United States v. Atandi, 376 F.3d 1186, 1188 (10th Cir. 2004) (footnote omitted); see also United States v. Latu, 479 F.3d 1153, 1159 (9th Cir. 2007); United States v. Bazargan, 992 F.2d 844, 847-48 (8th Cir. 1993). Furthermore, "an alien who has acquired unlawful or illegal status (either by overstaying a visa or illegally crossing the border without admission or parole) cannot relinquish that illegal status until his application for adjustment of status is approved." United States v. Elrawy, 448 F.3d 309, 314 (5th Cir. 2006). Al Sabahi remained in the United States after his visa expired, and his request for adjustment of status has not been approved. Therefore, under these general principles, Al Sabahi was illegally or unlawfully in the United States at the time he possessed the firearms in question.

B.

Despite these general rules, Al Sabahi makes two arguments that he was not illegally or unlawfully present in the United States under 18 U.S.C. § 922(g)(5)(A). First, he contends that he was "in effect 'paroled'" via 8 U.S.C. § 1182(d) when he registered through NSEERS. Pursuant to 27 C.F.R. § 478.11, aliens are not illegally or unlawfully in the United States if

7

they are in valid parole status. The U.S. Code provides that the Attorney General may parole aliens into the United States temporarily for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). In this case, however, the Attorney General did not take any action on Al Sabahi's behalf, and Al Sabahi does not identify any "urgent humanitarian reasons or significant public benefit" that warranted his parole. Furthermore, "parole is granted only to aliens who have not yet entered the United States," United States v. Anaya-Acosta, 629 F.3d 1091, 1094 (9th Cir. 2011) (per curiam), and Al Sabahi was already present in the United States when he complied with the NSEERS program. Therefore, Al Sabahi's argument that he was not illegally or unlawfully present in the United States because he was "in effect 'paroled'" fails.

Second, Al Sabahi argues that he was placed in "'limbo' or 'quasi' immigration status" when he filed his I-485 application for adjustment of his status. In support of this argument, Al Sabahi cites the Tenth Circuit's decision in United States v. Hernandez, 913 F.2d 1506 (10th Cir. 1990). In Hernandez, the Tenth Circuit held that the district court properly convicted the defendant under § 922(g)(5) because he purchased the gun in question before filing an amnesty application. Id. at 1514. The court explained in dicta that, "[h]ad [the defendant]

8

received the pistol after filing his amnesty application, he would not have been illegally in the United States for purposes of § 922(g)(5)." Id. Relying on this language, Al Sabahi contends that he was not illegally present in the United States when he possessed the firearms at issue because he had filed his I-485 application. However, although some courts have favorably cited this dicta, see, e.g., United States v. Salman, 266 F. Supp. 2d 1367, 1374 (M.D. Fla. 2003), rev'd on other grounds, 378 F.3d 1266 (11th Cir. 2004), this Court has held "that the mere filing of an application for adjustment of status and receipt of an employment authorization card does not legalize the alien's presence in the United States, and it is still a crime, under § 922(g)(5), for that individual to possess a firearm," United States v. Cavillo-Rojas, Nos. 10-4033, 10-4061, 10-4062, 10-4067, 10-4072, 2013 WL 563885, at *10 (4th Cir. Feb. 15, 2013). Furthermore, many other courts have declined to interpret Hernandez to allow the result that Al Sabahi seeks, see Latu, 479 F.3d at 1157-58; Elrawy, 448 F.3d at 313-14 & n.6; Atandi, 376 F.3d at 1192 & n.12, and the Tenth Circuit itself has called Hernandez into doubt, see United States v. Ochoa-Colchado, 521 F.3d 1292, 1294-95 (10th Cir. 2008) ("[T]he greater weight of authority is of the view that the filing of an application for adjustment of status before an alien's possession of firearms does not alter the alien's

9

status."). Because Al Sabahi's argument that he was not illegally in the United States due to his I-485 application lacks support, the pendency of this application does not alter our conclusion that Al Sabahi was illegally or unlawfully in the United States when he possessed the firearms in question.[*]

## C.

Next, Al Sabahi contends that the district court erred in allowing this case to proceed without waiting for an immigration judge to decide whether Al Sabahi was removable. As his only support for this proposition, Al Sabahi cites 8 U.S.C. § 1229a(a)(1), which states that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." However, this provision does not divest district courts of the ability to decide whether aliens

---

[*] Al Sabahi also points to a 1999 Immigration and Naturalization Service memorandum to argue that his I-485 application affects whether he was illegally or unlawfully present in the United States. See Robert L. Bach, Executive Associate Commissioner, INS, Accepting Applications for Adjustment of Status Under Section 245(i) of the Immigration and Nationality Act (April 14, 1999), available at http://www.section245i.com/info/ins-04-14-99.html. Specifically, Al Sabahi contends that "the period of authorized stay continues during the period in which the application is denied and renewed in removal proceedings." However, this memorandum explicitly states that the period of authorized stay applies only with respect to an unrelated provision of the Immigration and Nationality Act. See id. The memorandum consequently has no bearing on the case at hand.

10

are illegally or unlawfully present in the United States for the purposes of 18 U.S.C. § 922(g)(5)(A). See United States v. Bravo-Muzquiz, 412 F.3d 1052 (9th Cir. 2005) (considering whether the defendant was unlawfully present in the United States under § 922(g)(5)(A) even though his removal proceedings remained pending), superseded by statute on other grounds as recognized in Latu, 479 F.3d 1153. Al Sabahi's argument that the district court erred in moving forward with this case before an immigration judge determined his removability therefore lacks merit.

## III.

Al Sabahi next contends that the district court violated his Sixth Amendment confrontation right when it did not allow him to question government witness Thomas D. O'Connell about his pending I-485 application and participation in NSEERS. However, Al Sabahi does not clarify exactly how the district court violated his confrontation right. The district court allowed Al Sabahi's attorney to cross-examine O'Connell. See Davis v. Alaska, 415 U.S. 308, 316 (1974) ("Our cases construing the ([C]onfrontation) [C]lause hold that a primary interest secured by it is the right of cross-examination." (quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965)) (internal quotation marks omitted)). When Al Sabahi's attorney sought to ask O'Connell

11

about Al Sabahi's I-485 application and NSEERS registration, the court declined to permit this questioning on the basis that it was irrelevant. Because Al Sabahi has given no real reason why excluding this testimony violated his confrontation right and because he was permitted to cross-examine O'Connell, we decline to find any Sixth Amendment violation.

IV.

Finally, Al Sabahi contends that the evidence was insufficient to support the jury's verdict in this case. "We must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the [g]overnment, to support it." United States v. Cardwell, 433 F.3d 378, 390 (4th Cir. 2005). "Substantial evidence is that evidence which a 'reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Id. (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). For the reasons below, we find that the evidence was sufficient to support the verdict in this case.

18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) criminalize the knowing possession of firearms or ammunition. Possession may be actual or constructive. See United States v. Scott, 424 F.3d 431, 435 (4th Cir. 2005). To establish actual possession, the

12

government must prove that Al Sabahi "voluntarily and intentionally had physical possession of the firearm." Id. By contrast, the government can prove constructive possession by showing that Al Sabahi "intentionally exercised dominion and control over the firearm, or had the power and the intention to exercise dominion and control over the firearm." Id. at 436. The government can establish constructive possession by direct or circumstantial evidence. Burgos, 94 F.3d at 873.

With respect to Count One, the government proved that Al Sabahi actually possessed a .9-millimeter pistol on February 15, 2007, when Pepsi employee Jonathan Mosley attempted to remove a cooler from Scooters. Mosley and his supervisor, Donald Ferguson, both testified that they saw the gun on the counter, and Mosley identified Al Sabahi as the cashier working that day. Police Chief Mike Suggs confirmed that Al Sabahi had been accused of brandishing the pistol and stated that he had seen the weapon on prior occasions. Despite this testimony, Al Sabahi claims that the evidence was insufficient in light of a 911 report that the district court excluded under the rule against hearsay and Federal Rule of Evidence 403. Al Sabahi contends that the 911 report discredits Mosley's testimony because it indicates that Al Sabahi made the 911 call, which he would not have done if he possessed a gun. However, "where the evidence supports differing reasonable interpretations, the jury

13

will decide which interpretation to accept." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006). In light of the overwhelming evidence that Al Sabahi possessed the .9-millimeter pistol during his confrontation with Mosley, the jury's decision to accept the government's interpretation of the evidence was certainly reasonable, even assuming for the sake of argument that the district court erred in excluding the 911 report. Therefore, considered in the light most favorable to the government, the evidence was sufficient to prove that Al Sabahi possessed the firearm in question on February 15, 2007.

Regarding Count Two, the government proved that Al Sabahi constructively possessed a .9-millimeter pistol while he drove a gold Toyota Camry on March 18, 2007. Suggs testified that he knew Al Sabahi sometimes carried the gun while he drove and that he had warned him not to do so. During a traffic stop, Suggs looked inside the vehicle and saw a pistol grip extending from under the car's seat. Suggs recognized the firearm as the gun from Scooters. The government also produced considerable evidence that Al Sabahi typically possessed the gold Camry that he was driving on March 18, although Saleh owned the vehicle. In support of his argument that this evidence was insufficient to support the verdict, Al Sabahi relies on Saleh's cross-examination, during which Saleh stated that Al Sabahi did not know that the gun was in the car and that he did not see Al

14

Sabahi remove the gun from Scooters. However, the fact that Saleh did not see Al Sabahi take the gun does not indicate that Al Sabahi did not remove it without Saleh's knowledge. Furthermore, Saleh's testimony that Al Sabahi did not know the gun was in the vehicle simply contradicts Suggs's statement that Al Sabahi often carried the gun in the car and the testimony that Al Sabahi typically maintained control of the Camry. We must "assume that the jury resolved all contradictions in the testimony in favor of the government." Moye, 454 F.3d at 394. Applying this principle, we hold that the evidence was sufficient to find that Al Sabahi possessed the .9-millimeter pistol on March 18, 2007.

With respect to Count Three, the government proved that Al Sabahi actually possessed a firearm on May 9, 2007, when he purchased a .380-caliber handgun from Ronald Lee. Lee testified that he went to Scooters to sell the gun to Saleh but that Al Sabahi took cash from the register and purchased the firearm. The government also produced the receipt that Lee had made out to Al Sabahi. Although Al Sabahi correctly points out that other receipts show that Lee sold the firearm to Saleh, Saleh testified that he asked Lee to rewrite the receipt because Al Sabahi was an illegal alien who could not lawfully purchase a gun. Once again, we must favor the jury's interpretation of the evidence as long as that interpretation is reasonable. See

15

<u>Moye</u>, 454 F.3d at 394. Because the jury's conclusion that Al Sabahi possessed the .380-caliber handgun on May 9, 2007, was reasonable, we conclude that the evidence was sufficient to support Al Sabahi's conviction on Count Three.

V.

For the foregoing reasons, we hold that (1) the district did not err in determining that Al Sabahi was illegally or unlawfully present in the United States; (2) the district court did not commit any Confrontation Clause violation; and (3) substantial evidence supports the jury's verdict in this case. We therefore affirm Al Sabahi's conviction.

<u>AFFIRMED</u>