**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4588

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

DOUGLAS GERRELLE PITTMAN,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., Chief District Judge.  (1:16−cr−00020−WO−1)

Submitted:  May 12, 2017                         Decided:  June 15, 2017

Before GREGORY, Chief Judge, and DIAZ and THACKER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

Louis C. Allen, Federal Public Defender, Greensboro, North Carolina, Gregory Davis, Senior Litigator, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Winston-Salem, North Carolina, for Appellant.  Sandra J. Hairston, Acting United States Attorney, Kyle D. Pousson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Douglas Pittman appeals his convictions for possessing counterfeit money with the intent to defraud, possessing marijuana and cocaine base with intent to distribute, and being a felon in possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. §§ 472, 922(g)(1), 924(a)(2), (c)(1)(A)(i) and 21 U.S.C. § 841(a)(1), (b)(1)(B), (D). Pittman challenges the sufficiency of the evidence for all convictions and asserts that the district court abused its discretion in admitting a video of him holding a firearm. As there was sufficient evidence, and the district court did not abuse its discretion, we affirm.

I.

A.

On the night of April 15, 2015, in Greensboro, North Carolina, a Sheraton Hotel security officer helped Pittman bring a television up to the hotel room in which Pittman was staying. When Pittman opened the hotel-room door using a room key, the security officer "got a strong whiff of what smelled like marijuana." J.A. 115. The security officer did not hear anyone else inside the hotel room.[*]

The next day, Pittman entered a Champs shoe store in a Greensboro shopping mall. Pittman sought to purchase a pair of sneakers and shoe accessories and handed the cashier $230 in ten-dollar bills. The cashier checked each bill using the fraud-fighter system next to the register. Pittman, however, told her not to check the money. The cashier, noticing

_____

[*] Pittman admitted at trial that he had smoked marijuana that evening.

1

that Pittman was "fidgety and sweaty," whispered to her manager that the bills were fake. J.A. 66. The manager and the cashier concluded the sale. J.A. 58. Pittman asked on his way out of the store, "[a]m I straight?" J.A. 58. After Pittman left, the Champs employees called mall security. The Greensboro police also responded and found Pittman getting a pedicure in the mall.

The police approached Pittman, told him that they had a report of someone using counterfeit cash, and asked him how he had paid for his purchase at Champs. Pittman pulled a roll of money out of his pocket and gave it to the police. The officers proceeded to sort out the money into piles of counterfeit and real cash. They discovered eight counterfeit fifty-dollar bills, eight counterfeit twenty-dollar bills, and sixteen counterfeit ten-dollar bills ($720 total), along with legitimate currency.

When the officers asked Pittman where he got the money, Pittman "made up [a] story" about selling a car, gave the officers a fake name and birth date, claimed he had no criminal history, and said that he had just moved to Greensboro from Florida and was a student at North Carolina A&T University. J.A. 374, 383, 385, 387. The officers arrested Pittman and confiscated his phone, wallet, and car keys. They also obtained a search warrant for the hotel room where Pittman had spent the previous night.

In the hotel room, the police found a black-and-tan duffel bag, a green duffel bag, a shopping bag, a white garbage bag containing men's clothing, and three boxes of shoes. The police found more men's clothing in the black-and-tan bag, along with "a large bag of . . . marijuana, and a box of sandwich bags." J.A. 146. The green bag contained a Smith

2

& Wesson semiautomatic pistol, counterfeit money, a bag of white powder, a bag "containing an off-white rock-like substance," a bag with "smaller off-white rocks, and a digital scale." J.A. 152, 154, 157.

The police also seized an open bag of Doritos chips, in which they found scraps of counterfeit money cuttings and "some sandwich bags [with] the corners pinched off, which is consistent with packaging marijuana or other narcotics for sale." J.A. 149–50. When the officers shook the bed sheets, they found clippings from counterfeit money. Officers also found a pair of scissors on the counter in the bathroom. Digital-forensic detectives discovered a video on Pittman's phone depicting him rapping and waving a gun, which appeared to be the same gun found in the hotel room.

Following Pittman's arrest, the police located Pittman's girlfriend in the mall parking lot and arrested her for possession of counterfeit currency. The police found cut and uncut counterfeit currency in a tote bag and in her pockets. The police also confiscated her phone.

B.

Pittman was indicted for possession of counterfeit U.S. currency with intent to defraud (count one); possession with intent to distribute marijuana (count two); possession with intent to distribute cocaine base (count three); possession of a firearm in furtherance of a drug-trafficking crime—specifically possession with intent to distribute marijuana (count four); and possession of a firearm by a convicted felon (count five). He had

previously been convicted of felony possession of marijuana with intent to distribute, distribution of cocaine, and distribution of heroin.

Before the jury was empaneled, Pittman objected to the introduction of the cell-phone video depicting him rapping and waving what appeared to be the same gun as that found in the hotel room. He argued that the video had "no probative value as far as whether or not [he] . . . possessed a gun on April 16." J.A. 25. The court overruled the objection without prejudice to Pittman's right to renew it at trial.

At trial, Pittman again objected to the admission of the cell-phone video. The court again overruled the objection, concluding that the video was admissible "solely for the purpose of proving knowledge and intent as related to the possession of the firearm," and that the video would not be "unfairly prejudicial as it is certainly probative of issues relevant for the jury's consideration," under Federal Rule of Evidence 404(b). J.A. 322–23. The court also gave the jury a limiting instruction, preventing the jury from considering the evidence for any purpose other than how it "may relate to the defendant's knowledge and intent in relation to those offenses charged in the indictment." J.A. 331.

After the government rested, Pittman moved to dismiss all counts for insufficiency of the evidence. The court denied Pittman's motion. The jury convicted Pittman on all five counts. The court sentenced Pittman to a fine of $2,421, along with $500 in special assessment fees; 240 months' imprisonment each for counts one, three, and five, to run concurrently; 60 months' imprisonment for count two, to run concurrently with counts one, three, and five; and a 60 month term of imprisonment for count four, to run consecutively

4

after punishment for the other counts. The court also imposed a five-year term of supervised release.

## II.

On appeal, Pittman argues that the district court abused its discretion in admitting the cell-phone video of Pittman holding a gun. Additionally, he contends that there was insufficient evidence to support the jury's guilty verdicts. We address each of these claims in turn.

## A.

We begin with the district court's decision to admit the cell-phone video. We examine evidentiary rulings under Federal Rule of Evidence 404(b) for abuse of discretion. *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). "The district judge's decision to admit evidence under Rule 404(b) will not be overturned on appeal unless it was 'arbitrary or irrational.'" *United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990) (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988)).

Evidence of a defendant's prior acts may be admitted under Rule 404(b) if the evidence satisfies four factors:

> (1) The prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be "substantially outweighed" by its prejudicial nature.

*Queen*, 132 F.3d at 995.

For the first and second factors, we have held that a defendant's previous possession of firearms may be relevant to proving intent to possess a firearm on a subsequent occasion. *See United States v. Teague*, 737 F.2d 378, 381 (4th Cir. 1984) (holding that prior possession of a firearm is relevant when defendant denies knowing about the firearm's presence).

In this case, the district court found "sufficient similarities between the firearm that's been admitted into evidence as well as the firearm that . . . appears in the video, particularly a silver over black semiautomatic handgun, that the similarities are sufficient to meet the requirements of 404(b)." J.A. 323. The first and second requirements for admission of evidence under Rule 404(b) are therefore satisfied, as "previous possession of firearms may be relevant to proving intent," and intent is an element of a gun-possession crime under 18 U.S.C. § 922(g)(1).

Turning to the third factor, "[e]vidence is reliable . . . unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (internal quotation marks omitted). Here, the court determined that the "the identification of the defendant in the video . . . is sufficient to meet the requirement with respect to reliability under . . . Rule 404(b)." J.A. 323.

We are also satisfied that the district court properly tested the evidence for undue prejudice under Rule 403. In this regard, while "all evidence suggesting guilt is prejudicial to a defendant[,] [t]hat kind of general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence." *Siegel*, 536 F.3d at 319 (internal citations

6

and quotation marks omitted). Finally, the court gave the jury a limiting instruction emphasizing how it could consider the video.

In sum, we conclude that the district court's decision was informed by thoughtful consideration; it was neither arbitrary nor irrational. We therefore affirm the admission of the cell-phone video under Rule 404(b).

B.

Next we consider Pittman's objections to the jury verdicts. In reviewing a claim of insufficient evidence, "[t]he verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). In criminal cases, "substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996). "[C]ircumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989). It is not the role of appellate judges to "weigh the evidence or to determine the credibility of the witnesses." *Glasser*, 315 U.S. at 80. "[A]ppellate reversal on grounds of insufficient evidence . . . will be confined to cases where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

1.

We first address Pittman's claim that there was insufficient evidence to convict him of possessing counterfeit currency with the intent to defraud, in violation of 18 U.S.C. § 472. To convict a defendant of this offense, the government must prove that: (1) the defendant possessed counterfeit money; (2) "at the time of such possession, he knew the money to be counterfeit"; and (3) "he possessed the counterfeit money with the intent to defraud." *United States v. Leftenant*, 341 F.3d 338, 347 (4th Cir. 2003). Circumstantial evidence may be used to support a conviction on this offense. *See United States v. Figuried*, 571 Fed. App'x 181, 182-83 (4th Cir. 2014) (citing *United States v. Hager*, 721 F.3d 167, 179 (4th Cir. 2013)) ("Although the evidence supporting intent is circumstantial, we conclude that, when viewed in the light most favorable to the Government, the evidence is sufficient to sustain [defendant's] conviction."). Such evidence may include the amount of money and a defendant's "inability to explain credibly how he obtained possession of the counterfeit money." *Figuried*, 571 Fed. App'x at 182.

In this case, a reasonable jury considering the circumstantial evidence could have found Pittman guilty of possessing counterfeit currency with the intent to defraud. Pittman had $720 of counterfeit currency, along with genuine currency, on his person, satisfying the first factor. As for the second factor, Pittman's behavior strongly supports the jury's conclusion that he knew the money to be counterfeit: Pittman was "very fidgety" and "was sweating" while in the Champs store, and he directed the Champs store clerk not to check the money when she began to inspect the bills. J.A. 42, 66. Pittman also asked the clerk,

8

"[a]m I straight?" just before leaving the store, as if to inquire whether he was in trouble. J.A. 58. Further, when the police asked Pittman how he had come to possess the money, he made up a story about selling a car, gave the officers a fake name and birth date, and falsely claimed that he had no criminal history. Finally, Pittman used the counterfeit money to buy shoes and shoe accessories at Champs, demonstrating that he possessed the counterfeit currency with the intent defraud, and satisfying the third factor.

On this evidence, the district court correctly rejected Pittman's motion to dismiss the charge.

2.

We next address Pittman's contention that the evidence presented to the jury was insufficient to support his conviction for knowingly possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D). A defendant may be found guilty of possession of drugs with intent to distribute if he had constructive possession of the contraband. *United States v. Laughman*, 618 F.2d 1067, 1076–77 (4th Cir. 1980). Possession does not have to be exclusive; it may be shared. *Id.* at 1077. "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item." *Id.* Circumstantial evidence is sufficient to establish constructive possession. *Id.*

One may have constructive possession of drug contraband "even if it is not in his immediate possession or control." *United States v. Shorter*, 328 F.3d 167, 172 (4th Cir. 2003). That drugs are found where the defendant lives or is staying can support a finding

9

of constructive possession. *See United States v. Jones*, 204 F.3d 541, 543-44 (4th Cir. 2000) ("Given that the [contraband] at issue here was found behind the dresser drawer in the bedroom from which the officer saw [defendant] exit . . . we cannot say that the . . . trier of fact erred in finding that [defendant] possessed the [contraband].").

Pittman contends that the government failed to prove possession (whether actual or constructive) because there were three other people occupying the hotel room at the relevant time: Pittman's girlfriend, his brother, and Pittman's friend Marquis. He says that because he did not have exclusive access to the hotel room where the police found drugs, the marijuana "could have been put in the bag after Defendant left the room to go to the mall." Appellant's Br. at 23. Pittman also claims that the bags found in the room were not his, that he did not look in the bags found in the room, and that he did not bring any bags to North Carolina.

We are unpersuaded. Sole occupancy of a room is not required, as possession may be joint. *See Laughman*, 618 F.2d at 1077. The evidence in this case further indicates constructive possession: Pittman spent the most time in the hotel room, the security officer did not see or hear any other occupants, and Pittman himself testified that he was the sole occupant of the room the night before his arrest. His nearly sole presence in the hotel room supports a finding of constructive possession. Pittman also admitted to smoking marijuana that night, meaning that he in fact must have possessed some amount of marijuana that evening. We therefore hold that the government presented sufficient evidence to support the jury's verdict as to this offense.

10

3.

Next we address Pittman's claim that there was insufficient evidence to support the jury verdict that he knowingly possessed with intent to distribute 28 grams of a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Pittman argues that the government "did not prove that there were 28 grams or more of cocaine base because the cocaine base was a small amount mixed in with a much larger amount of cocaine powder." Appellant's Br. at 15. Relying on the United States Sentencing Guideline Manual, Pittman contends that the combined weight of the cocaine base and cocaine powder may not be categorized as a "mixture" for the sake of drug weight, because cocaine base and cocaine powder "are not used in the same manner," and must be separated to be used. *Id.* (citing U.S. Sentencing Guidelines Manual § 2D1.1 cmt. 1 (U.S. Sentencing Comm'n 2004)).

But rather than consider the Sentencing Guidelines, we look to the relevant portion of U.S. Code defining the offense, which provides that the entire weight of the mixture may be used as evidence that Pittman possessed 28 grams or more of a mixture or substance containing cocaine base. Specifically, the statute makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance," including "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine, its salts" or "28 grams or more of a mixture or substance . . . which contains cocaine base." 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii)–(iii).

11

As the bag found in the hotel room contained more than 28 grams of a mixture containing cocaine base, Pittman's argument that the specific amount of each type of cocaine must be known flies in the face of the statute, which merely requires the government to show that a mixture or substance weighing more than 28 grams contains cocaine base. Because Pittman constructively possessed over 100 grams of a cocaine mixture that included cocaine base, there was sufficient evidence from which the jury could convict Pittman for this offense.

Moreover, Pittman's interpretation of the Guidelines finds no support in the cases. In *Chapman v. United States*, the Supreme Court considered whether the weight of blotter paper, acting as the carrier for LSD, should count towards the drug weight in calculating the defendant's sentence, as the statute at issue distinguished between the weight of a pure drug and the weight of a "mixture or substance containing a detectable amount of a pure drug." 500 U.S. 453, 459 (1991) (internal quotation marks omitted). The Court held that "the weight of the carrier medium . . . [is required] to be included when determining the appropriate sentence for trafficking in [a drug]." *Id.* at 468.

Further, when two drugs, such as cocaine base and cocaine hydrochloride, are present in a mixture, we have held that the entire weight of the mixture may be considered when determining a defendant's sentence. *United States v. Davis*, 278 F. App'x 263, 265 (4th Cir. 2008). The defendant in *Davis* contended that "the evidence was insufficient to show the individual weights of the cocaine base and cocaine hydrochloride, and it was therefore impossible for the jury to conclude that the weight of the cocaine base was greater

than five grams" under the statute at issue. *Id.* Citing *Chapman* and 21 U.S.C. § 841(b)(1)(B), we found the defendant's argument was without merit, because "the entire mixture or substance is weighed when calculating the sentence." *Id.*

Accordingly, we reject Pittman's claim.

4.

Pittman also contends that there was insufficient evidence to support his convictions for knowingly possessing a firearm while a felon, in violation of 18 U.S.C. § 922(g)(1), and possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

For a defendant to be guilty of being a felon in possession of a firearm, the government must prove that, "(1) [the defendant] had been convicted in some court of a crime punishable by a term of imprisonment exceeding one year; (2) he thereafter voluntarily and intentionally possessed a firearm; and (3) the firearm had been shipped or transported in interstate or foreign commerce at some point during its existence." *United States v. Langley*, 62 F.3d 602, 604 (4th Cir. 1995). Even if a defendant argues that he lacked the "intent to have constructive possession of the gun in question," the jury may "simply disagree[]." *United States v. Scott*, 424 F.3d 431, 437 (4th Cir. 2005). Possession may be shared; it does not have to be exclusive. *See Laughman*, 618 F.2d at 1077.

A reasonable jury may infer constructive possession—and thus guilt—on the part of the defendant, even when the evidence that the defendant and the firearm were in the same place is "weaker." *United States v. Gallimore*, 247 F.3d 134, 137 (4th Cir. 2001).

13

Evidence of a defendant engaging in "highly suspicious activity" may be enough to show knowledge of contraband. *See Herder*, 594 F.3d at 359. And while "[i]t is true that merely being . . . in proximity to contraband is not enough to constitute constructive possession . . . , where other circumstantial evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt on such charges." *Laughman*, 618 F.2d at 1077 (internal citations and quotation marks omitted). This circumstantial evidence may include a "connection with a gun . . . evasive conduct, or a statement indicating involvement in an enterprise." *United States v. Morris*, 977 F.2d 617, 620 (D.C. Cir. 1992) (internal quotation marks omitted).

Here, although Pittman claimed that the firearm belonged to someone else, this did not foreclose the jury from concluding that Pittman exercised constructive possession over it. To begin with, the jury could infer possession from Pittman's evasive conduct toward the police. Further, the jury could have reasonably determined that the firearm that Pittman was waving in the cell-phone rap video was the same weapon the police found in the hotel room.

We are also satisfied that the record supports the jury's guilty verdict as to the offense of possession of a firearm in furtherance of a drug-trafficking crime. For this offense, the jury had to find that Pittman knowingly possessed with intent to distribute a drug and knowingly possessed a firearm. 18 U.S.C. § 924(c)(1)(A). As we have discussed, the evidence provides ample support that Pittman possessed marijuana and cocaine with the intent to distribute them, and that he also had a firearm near the drugs.

14

III.

For the reasons given, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*